Mary LAUCK

v.

**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA PENSION TRUST, Appellant.**

**No. 80–1539.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 13, 1981.

Decided June 30, 1981.

William P. Owens, Washington, D. C., with whom Harrison Combs, Washington, D. C., was on the brief for appellant.

Charles Krikawa, IV, Washington, D. C., for appellee. Robert Cadeaux, Washington, D. C., was on the brief for appellee.

M. Carr Ferguson, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty., Michael L. Paup, Gary Allen, and Jo-Ann Horn, Attys., Dept. of Justice, Washington, D. C., were on the brief for amicus curiae urging reversal.

Before McGOWAN and ROBB, Circuit Judges, and JAMESON,* Senior District Judge for the District of Montana.

Opinion for the Court filed by Senior District Judge JAMESON.

JAMESON, Senior District Judge:

International Union, United Mine Workers of America (UMWA) Pension Trust has appealed from a summary judgment in favor of plaintiff, Mary Lauck, holding that she is entitled to survivor's benefits from her deceased husband's pension. The District Court held that plaintiff's husband, Rex Lauck, was an "active participant" in the UMWA Pension Plan after January 1, 1976, the effective date of pertinent sections of Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., and the qualified pension plan provisions of the Internal Revenue Code (IRC), 26 U.S.C. § 401 et seq.[1] We reverse.

The facts are not disputed. Rex Lauck worked for the UMWA for twenty-three years until he resigned on May 1, 1974, at the age of fifty-four. At the time of his resignation, the UMWA Pension Plan entitled Lauck to receive benefits when he reached age sixty.

The Pension Trust is a qualified pension and retirement fund under IRC § 401(a) and ERISA. Section 205(a) of ERISA, 29 U.S.C. § 1055(a), specifies:

> If a pension plan provides for the payment of benefits in the form of an annuity, such plan shall provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity.[2]

The parallel tax provision is IRC § 401(a)(11)(A). Both sections were effective January 1, 1976. 29 U.S.C. § 1061(b)(1); P.L. 93–406, Section 1017(b), 26 U.S.C.S. § 401 note.

On December 15, 1976, the UMWA Pension Plan was amended, retroactive to January 1, 1976, to comply with ERISA and assure its status as a qualified trust under the IRC. The first amendment relevant to this appeal was concerned with early retirement benefits. Article II of the plan was changed to provide an election for any retiree with at least ten years of service to take a regular pension beginning at age sixty or, alternatively, "an *actuarially-equivalent reduced pension* beginning at any time after he attains age 55." Article II E continues:

> A participant with such service *employed and terminating after January 1, 1976,* shall be eligible upon reaching age 55 for a Joint and Survivor Annuity as provided in Article V and the pension of a participant who receives the Joint and Survivor Annuity shall be reduced actuarially as provided therein.... (emphasis added).

Article V, governing Joint and Survivor Annuities, provides:

> A participant *employed and retiring after January 1, 1976,* who is or will be entitled to a pension by virtue of his age and years of service, shall have the choice of (1) a pension for his life only in the amount applicable to him as provided under Article IV, or (2) a Joint and Survivor Annuity. A Joint and Survivor Annuity

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. ERISA consists of four titles, only two of which are relevant to this case. Title I, aimed at protecting employee benefits, is codified in 29 U.S.C. § 1001 et seq. Title II contains amendments to the Internal Revenue Code regarding taxation of pension plans, which are codified in 26 U.S.C. § 401 et seq. See *Baker v. Otis Elevator Co.,* 609 F.2d 686, 689–90 (3 Cir. 1979). For simplicity, in this opinion we refer to the Title I provisions as "ERISA," and the Title II analogues as "IRC," even though technically both titles are part of the same Act.

2. A qualified joint and survivor annuity is defined as

> an annuity for the life of the participant with a survivor annuity for the life of his spouse which is not less than one-half of, or greater than, the amount of the annuity payable during the joint lives of the participant and his spouse and which is the actuarial equivalent of a single annuity for the life of the participant.

29 U.S.C. § 1055(g)(3); IRC § 401(a)(11)(G)(iii).

is an actuarially reduced pension for the life of the participant, 50 percent (50%) of which will be continued after the death of the participant for the life of any qualified surviving spouse....

A qualified surviving spouse shall be any spouse who has been married to the participant for at least one year prior to his death. (emphasis added).

In November, 1976, the UMWA's Personnel Director advised Lauck that the plan was going to be amended to provide for early retirement benefits for which Lauck would be eligible. On November 18, 1976, Mary Lauck filed an application for a pension on behalf of her husband, based on the proposed retroactive amendments to the plan.

Rex Lauck died on December 1, 1976. Mary Lauck then applied for joint and survivor benefits as a surviving spouse. The Pension Plan Administrators informed Mary Lauck on February 23, 1977, that since her husband retired before January 1, 1976, he would not have been eligible for a joint and survivor annuity and therefore she was not entitled to benefits as a surviving spouse.

Mary Lauck brought this declaratory judgment action to determine her rights as a surviving spouse. The parties filed cross-motions for summary judgment. The District Court concluded that Mary Lauck was entitled to survivor's benefits and entered summary judgment in her favor. The Pension Trust appealed.[3]

The sole issue on appeal is whether the District Court correctly held that Rex Lauck was an "active participant" in the UMWA Pension Plan after January 1, 1976. The District Court recognized that under the express terms of the plan, as amended, Lauck was not entitled to a joint and survivor annuity because he was not "employed and retiring after January 1, 1976." ERISA governs the Pension Trust, how-

ever, and the court held that ERISA Section 205 required that Lauck be found eligible for a joint and survivor annuity.

There is no question that Section 205 and its IRC counterpart were intended to protect retired employees and their surviving spouses; but the application of those provisions is expressly limited to situations where

(1) the annuity starting date did not occur before the effective date of this section, and

(2) the participant was an active participant in the plan on or after such effective date.

ERISA § 205(i); IRC § 401(a)(11)(H). "Annuity starting date" is the first day when benefits are received by a retiree. ERISA § 205(g)(1), IRC § 401(a)(11)(G). There is no dispute that Lauck did not receive any benefits as an annuitant prior to January 1, 1976.

The question remains, however, whether Lauck was an "active participant" in the plan after January 1, 1976. "Active participant" is not defined in ERISA. The Act defines "participant" as

any employee or former employee ... who is or may become eligible to receive a benefit of any type from an employee benefit plan....

29 U.S.C. § 1002(7). Lauck was clearly a participant under this definition, but as the UMWA argues, Congress' use of the modifier "active" in the above code sections indicates there is a distinction between mere participants and active participants.

The Treasury Department has defined "active participant" in a regulation under IRC § 401:

For purposes of this paragraph, the term "active participant" means a participant for whom benefits are being accrued under the plan on his behalf....

Treas.Reg. § 1.401(a)–11(f).[4] The District Court reasoned that since Lauck was eligi-

**3.** The United States on behalf of the Secretary of the Treasury has filed an *amicus curiae* brief in support of the position of appellant Pension Trust that the summary judgment in favor of appellee Lauck should be reversed and judgment entered in favor of appellant.

**4.** Although the Department of Labor has not issued regulations covering ERISA's joint and

ble to receive a reduced monthly benefit as of January 1, 1976, but if he waited until age sixty he would receive a full pension, "his benefits were increasing for each portion of a year during which he delayed in taking his pension after January 1, 1976." Thus, the court decided, "his benefits were accruing" despite the fact that "he was no longer employed as of that date." Therefore, the court concluded, Lauck was an active participant in the plan.

The District Court's analysis disregards the nature of actuarially reduced benefits. When a person retires, under a defined benefit plan his accrued benefit is fixed. If he elects to take early benefits, his reduced monthly benefit reflects his longer life expectancy (as of the date benefits become payable) and corresponding longer period of receiving benefits in the case of a life annuity. In theory, the same amount of total benefits will be paid out whether a retiree receives reduced monthly benefits for a longer period or higher monthly benefits for a shorter period. The present value of the benefits is the same.

ERISA's definition of "accrued benefit" comports with this analysis:

> The term "accrued benefit" means—
>
> (A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in Section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age, . . .

29 U.S.C. § 1002(23)(A). In other words, the meaning of "accrued benefit" does not change even though the retiree may elect to receive reduced annual benefits starting before normal retirement age. The statutory scheme is based on this concept of "actuarial equivalence." See IRC § 411(a)(7)(A) and IRC § 411(c)(3). Under the proper analysis, no benefits were "being accrued" for Lauck after his retirement, so he was not an active participant under the definition in Treas.Reg. § 1.401(a)–11(f).

Our conclusion is supported by the legislative history of an analogous provision of ERISA (IRC § 219) dealing with Individual Retirement Accounts (IRAs). An individual is allowed a tax deduction for amounts paid into a qualified IRA, but not if the individual is an "active participant" in a qualified pension plan. IRC § 219(b)(2)(A). Like the definition in Treas.Reg. § 1.401(a)–11(f), for purposes of the IRA deduction "an employee is to be considered an active participant in a plan if . . . benefits are accrued under the plan on his behalf." House Rep.No.93–807, 93d Cong., 2d Sess. p. 129 (1974), reprinted in 3 U.S.Code Cong. & Admin.News 4639, 4670, 4793 (1974). The House Report explains further:

> An individual generally is not to be considered to be an active participant in a plan after he is separated from service with a vested interest in the plan. Also, an individual is not to be considered an active participant in a plan after his employer has completely terminated contributions under the plan, even though the thrust continues to provide benefits for the individual.

*Id.* 3 U.S.C.C.A.N. at 4794. Active participation is thus determined by whether a

---

survivor annuity provisions, it has published a pamphlet entitled "What You Should Know About the Pension and Welfare Law, A Guide to the Employee Retirement Income Security Act of 1974." The guide indicates that the Labor Department shares the Treasury Department's views regarding the term "active participant" as used in ERISA and the IRC. In Chapter 7, "Opportunity to Provide Survivor Pensions to Spouses," the guide states:

> Remember, ERISA does not guarantee a survivor annuity to all widows and widowers of employees. It does not require a survivor annuity for widow(ers) of participants who die before the date of the joint and survivor

annuity must be provided. It does not provide for a survivor annuity for spouses of employees who reject the joint and survivor annuity. *It does not provide for a survivor annuity for spouses of participants who are already retired or deceased before the effective date of the joint and survivor provisions. It does not provide for a survivor annuity for spouses of participants who ceased to be active participants before the effective date of the joint and survivor provisions.* Finally, the joint and survivor provisions do not apply to employees who participate in plans which are exempt from the joint and survivor provisions. (Emphasis added.)

person is still working and making contributions to a retirement fund. There is no reason to believe Congress intended a different test under the joint and survivor annuity provisions of ERISA. Under this test, Rex Lauck was not an active participant in the UMWA Pension Plan after January 1, 1976, because he had retired almost two years earlier and no more contributions were being made (i. e., benefits were not accruing) on his behalf.

Accordingly, we conclude that ERISA § 205, 29 U.S.C. § 1055 and IRC § 401(a)(11)(A) do not require that Lauck be found eligible for a joint and survivor annuity. Since the UMWA Pension Plan, as amended, expressly excludes employees who retired before January 1, 1976 from eligibility for joint and survivor annuities, Mary Lauck is not entitled to survivor's benefits under her husband's pension plan.

There is no issue of fact to be resolved by a trial, and the Pension Trust is entitled to judgment as a matter of law. We reverse and remand to the District Court with direction to enter judgment for the defendant.