**In re Byron Robert LAWRENCE, Debtor.**

**Bankruptcy No. 84–03177.**

United States Bankruptcy Court, N.D. Iowa.

Feb. 19, 1986.

David A. Opheim, P.C., Fort Dodge, Iowa, for debtor.

Thomas T. Tarbox, Fort Dodge, Iowa, Trustee in Bankruptcy.

### MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge, sitting by designation.

The question before the court is the trustee's objection to the debtor's claim of exemption under Iowa Code § 627.6(9)(e) of his "Keogh Plan" retirement rights valued at $36,000.00. More precisely, the debtor has scheduled as an asset under schedule B–2(v) his Keogh Plan as "Equitable Or Future Interest, Life Estates And Rights Or Powers Exercisable Before The Benefit Of The Debtor Other Than Those Listed In Schedule B–1" at a value of $36,000.00. The debtor then on his schedule B–4 claims the foregoing Keogh Plan as a "retirement fund" exempt under the Iowa statute cited.

Keogh Plans are retirement plans set up by self-employed individuals under the popularly named Keogh-Smathers Act, October 10, 1962, P.L. 87–792 76 Stat. 809. The

statute is more formally referred to as the Self-Employed Individuals Tax Retirement Act Of 1962, 26 U.S.C. §§ 37, 62, 72, 101, 104, 105, 172, 401–405, 503, 805, 1361, 2039, 2517, 3306, 3401, 6047, 7207. See USCS Tables, Popular Names, Lawyers Co-Op Pub. Co. (1985).

Keogh Plans do not come under the separate "ERISA" system provided by the Employee Retirement Income Security Act Of 1974, 29 U.S.C. § 1001 et. seq. Under a Keogh Plan the self-employed individual may withdraw deposited funds without penalty when he or she becomes 59½ years in age, dies, or is disabled. If the funds are withdrawn before any of these events occur, the individual must pay a penalty tax of ten percent in addition to regular income taxes, and is barred from making contributions to the Plan for five years.

## THE FACTS

' The debtor Byron Robert Lawrence was 58 years of age at the time of the hearing on this matter on September 27, 1985. He is married and his wife is 48 years of age. They have three children who are all grown, except the youngest, who is a senior in high school. The debtor was engaged in turkey farming until two years ago but has been able to engage only in part-time harvesting work, and a small corn crop operation of twenty acres, since that time. He filed a Chapter 7 voluntary bankruptcy petition on October 22, 1984.

The debtor established his Keogh Plan in 1967 and made contributions to the same on a yearly basis until 1981. No contributions have been made since that date.

The debtor's wife is partially disabled from a automobile accident and works approximately twenty-five hours a week at minimum wage level for a phone answering service. The total annual family income is approximately $10,000.00, split evenly between the husband and wife.

The debtor has no savings other than the Keogh Plan funds. His wife has a savings account with a $5,000.00 balance stemming from the automobile accident recovery. The debtor has cash value in an insurance policy, which has been used in recent years to help make a $5,000.00 annual payment on the mortgage on the family residence. There presently is left $3,000.00 in cash value in the insurance policy.

The debtor has been a farmer all his life, has education including one year of college in agricultural subjects, but has found his age to be a problem in obtaining work for other farmers and does not have the capital or realistic financing capability to resume a full-time turkey farm operation on his own.

The debtor's wife has a heart condition which requires specialist care every three months or so in Missouri, at a cost of approximately $300.00 for each visit. She has no other assets in her own name and is dependent upon her earnings, and whatever her husband can provide, to obtain such medical treatment.

The family residence was scheduled in the debtor's bankruptcy schedules at a value of $88,000.00, with a mortgage against the same having a balance then remaining of $30,200.00. The debtor testified at the hearing that due to the current depressed agricultural land values in Iowa the present fair market value is no more than $80,000.00. The court accepts this testimony and in fact has some question as to whether the value has not dropped even below that level at the present time.

## THE LAW

Iowa has "opted out" of the federal exemptions granted by 11 U.S.C. § 522(d), as permitted by subsection (b)(1) of that section, and accordingly the debtor has made his claim of exemption under Iowa Code § 627.6(9)(e), which provides as follows:

A debtor who is a resident of this State may hold exempt from execution the following property.... (9) the debtor's rights in ... (e) a payment under a pension, annuity or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Neither party was able to cite any Iowa case decision, either in the federal or the state courts, construing the foregoing statute as to the question of exemption here presented. However, the court notes that the federal exemptions include a substantially equivalent exemption as provided in 11 U.S.C. § 522(d)(10)(E), reading as follows:

(d) The following property may be exempted.... (10) the debtor's right to receive.... (E) a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor....

Before discussing the case decisions construing the place of a Keogh Plan under the foregoing statutory language, it is well to emphasize what is *not* claimed as a basis for exemption in this case. This will narrow down substantially the examination of relevant case law. There is no contention here that the Keogh Plan funds have not become "property of the estate" pursuant to 11 U.S.C. § 541(a). There is likewise no contention that the retirement funds here in question are excluded from administration as property of the estate by the specific provision of § 541(c)(2) dealing with spendthrift trusts which are valid and enforceable under local non-bankruptcy law. Finally, there is no contention here that the Keogh Plan funds are exempted under 11 U.S.C. § 522(b)(2)(A) giving an alternative federal exemption (even in "opt out" states) where *other* federal non-bankruptcy law provides a basis for exemption.

Coming then to the narrow question as to whether exemption is justified in this case under the Iowa exemption statute, and its functional equivalent in 11 U.S.C. § 522(d)(10)(E), one court has held that Keogh Plans which have not yet vested in a right to payment without penalty at the time of bankruptcy are not exempt under the latter statutory provision. That court focused on the reference to "a payment" in the statutory language defining what is exempted. *In re Clark*, 711 F.2d 21 (3rd Cir.1983). However it has been recently held in Iowa, in a case involving a retirement fund and a profit sharing plan under the ERISA system, but directly construing Iowa statute § 627.6(9)(e) on this point, that the "payment" distinction is insufficient to bar a claim of exemption. *In re Wayne Flygstad*, 56 B.R. 884 (N.D.Iowa, 1986).

As stated by Bankruptcy Judge Wood in the *Flygstad* decision construing the Iowa statute:

The trustee interprets the statute as requiring a debtor's interest in a pension plan to be "in a payment mode". That is, a debtor must be actually receiving payments from the plan in order to claim an exemption. The trustee asserts that such a result obtains from the plain language of the statute. The Court reaches a different conclusion. Section 627.-6(9)(e) allows an exemption for the debtor's "rights in a payment". To limit "rights in a payment" to current payments received is an unreasonably restrictive interpretation of the statute. The Court concurs in the decision of the District Court for the Southern District of Iowa where it recently held: "The debtors have 'rights in a payment' under the plan regardless of when the payment may be due. This is clearly contemplated by the very nature of the exemptions in Iowa Code § 627.6(9). An interest in future payments necessarily includes an interest in the present assets from which those payments will be made. The exemption therefore applies to all those assets in the fund, not just present payments due." *In re Pettit*, 57 B.R. 362 at p. 363 (Central Division, S.D.Iowa 1985), in affirming *Matter of Pettit*, 55 B.R. 394 (Bkrtcy.S.D.Iowa 1985).

I find persuasive and follow the ruling of Judge Wood on this point in the *Flygstad* Case. I also find persuasive the rationale given by Circuit Judge Becker, who concurred on other grounds in the result in *In re Clark, supra,* when he criticized the

majority's use of the "payments" distinction:

The majority concludes that "[t]he exemption of *future* payments ... demonstrates a concern for the debtor's long-term security which is absent from the statute." I have substantial doubts that the majority has correctly assessed congressional intent, for the distinction required by the majority's reasoning effectively penalizes self-employed individuals for the form in which their retirement assets are held. The majority's holding will not affect employee pension and annuity plans created by employers, because the assets of such plans would not be included in the debtor's estate under section 541, and thus cannot be reached by the trustee. The assets of a Keogh plan in contrast, are clearly assets of the estate. Thus Congress' putative lack of concern for the long-term security of the debtor works to the detriment only of self-employed debtors—a result I find inconsistent with Congress' manifest solicitude for retirement benefits for self-employed individuals.

In light of this inconsistency, it seems to me equally plausible to infer a congressional intent to encompass all retirement plans of whatever form. Section 522(d)(10)(E) exempts the debtor's right to receive payments "under a stock bonus, pension, profit-sharing, annuity, or *similar plan* or contract on account of illness, disability, death, age, or length of service...." (Emphasis added). A Keogh plan would seem to be "similar" to a pension or annuity plan, payments under both of which are exempt under this statute although they presumably represent long-term security arrangements.

\*   \*   \*   \*   \*   \*

As I read the majority's opinion, no retirement or disability plan whose assets are included in the debtor's estate under section 541 would be exempt if the right to payment thereunder was a future right. This would presumably preclude exemption of the assets of Individual Retirement Accounts (IRA's) as well. [711 F.2d 21, 24]

It is true that courts are properly concerned with interpretations of exemption law that might permit a debtor easy evasion of normal obligations to creditors not contemplated by the bankruptcy laws. In the case of *Matter of Witlin*, 640 F.2d 661 (5th Cir.1981), the court was dealing with the prior Bankruptcy Act rather than the present Bankruptcy Code, and had before it only the question of whether a Keogh Plan was excludable as a valid spendthrift trust under Florida law. However, in the course of an opinion deciding Florida would not enforce the spendthrift provision, Circuit Judge Tuttle voiced the common underlying concern in this area:

There is, of course, a strong public policy that will prevent any person from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors. Many states have enacted statutes which give effect to this policy. *See* fn. to text, Bogert at pp. 438–439. We find no Congressional policy that would counter the common law principle. If Congress had intended such Keogh plans to be exempt from attachment for the debts of the employer-settlor, it could easily have said so. *Cf.* 38 U.S.C. § 3101(a) which states that certain veterans' benefits "shall be exempt from the claims of the creditors. [640 F.2d 661, 663]

A Keogh Plan can be likened to a revocable trust, in a sense, albeit with the sanction of a tax penalty attached to early withdrawal. If this bankruptcy proceeding involved a relatively young professional, the withholding of sizeable funds from creditors on mere speculation as to financial needs at a distant retirement age would raise a natural disinclination to view the exemption favorably. Cf. *Matter of Kochell*, 26 B.R. 86 (W.D.Wisc.1982) (44 year-old M.D.); *In re Clark*, 18 B.R. 824 (E.D.Tenn.1982) (37 year-old M.D.); *In re Clark*, 711 F.2d 21 (3rd Cir.1983) (43 year-old licensed therapist).

In the case presently before this court, however, the facts do not require speculation as to any distant financial situation but instead demonstrate a *real* and *imminent* pension need. Indeed, the facts paint a picture completely contrary to any pre-bankruptcy manipulation by a debtor, or a resort to an easy abuse of the bankruptcy laws, to thwart his creditors. The debtor here made Keogh Plan contributions during a period extending from 1967 to 1981. There were no contributions made immediately prior to bankruptcy, in any effort to "insulate" his assets from his creditors. Moreover, the court has the power to examine any possible abuse by virtue of the necessity of a further finding that the Keogh Plan funds are "reasonably necessary for the support of the debtor and any dependent of the debtor" under the applicable statute.

While it is true that the debtor at the date of filing bankruptcy had a right to withdraw the funds from the Keogh Plan at any time, it is also true that for an individual of his age the tax penalty involved in withdrawal would be a severe deterrent to such action by the debtor. In the present case, the tax penalty facing a 57 year-old man in the debtor's circumstances, on the date of the filing of this bankruptcy petition, was in my opinion a comparable deterrent to easy access to retirement funds as that provided by the "employment termination" deterrent restricting employees from reaching their retirement funds under more traditional "pension" systems. In this regard I disagree with the broad generalization to the contrary in *Matter of Goff,* 706 F.2d 574, 8 C.B.C.2d 894, 911 (5th Cir.1983).

I am aware that an argument can be made from legislative history, at least as to Bankruptcy Code § 552(d)(10)(E) if not the Iowa statute, that the failure to include the broader "assets held, payments made, and amounts payable" language from the Uniform Exemption Act § 6 model indicates an intent to limit exemption to payments being received under a vested pension rather than as here the actual assets of a Keogh Plan. See *In re Clark,* 711 F.2d 21, 24 (3rd Cir.1983). However, there is nothing in the legislative history to indicate intent other than this difference in language.[1] I adhere to the view adopted above from the *Flygstad* and *Pettit* bankruptcy court decisions in Iowa to the effect that "rights ... in a payment" per the Iowa exemption statute can be, and should be, construed to include an interest in the present assets from which those payments will be made.[2]

■ In consideration of all of the foregoing, I conclude that a Keogh Plan can be exempted as a matter of law as a "pension, annuity, or similar plan or contract" pursuant to Iowa Code § 627.6(9)(e) in a Chapter 7 bankruptcy proceeding.

The trustee has cited three cases which he contends support a contrary ruling by this court. One of these is *Matter of Witlin,* 640 F.2d 661 (5th Cir.1981), which I have considered above, noting its distinguishing procedural and statutory facts. The trustee has also cited the decisions in *In re Mendenhall,* 4 B.R. 127 (Oregon 1980), and *In re Clark,* 18 B.R. 824 (E.D. Tenn.1982). However, *Mendenhall* involved the prior Bankruptcy Act and a Oregon statute not comparable to the present case. References to the current Bankrupt-

---

**1.** It appears that the earlier Proposed Bankruptcy Act of 1973 offered by the Commission On Bankruptcy Laws likewise included broader "rights" language. See 711 F.2d at 24, fn. 2. I believe this additional "event" is of little weight in searching out legislative intent some five years later when the 1978 Bankruptcy Code was enacted.

**2.** The language used by Congress in § 522(d)(10)(E) is in fact ambiguous and probably indicates that the legislative body simply did not want to attempt the tough task of drawing a

line between the case of a 30 year-old debtor, with future prospects for providing adequately for retirement, and the case of a debtor in his or her late 50's with a real need for funds saved for that purpose. The ambiguity is appropriately resolved by including a Keogh Plan within the scope of the exemption, as a matter of law, but leaving to the factual "reasonably necessary" statutory requirement the task of policing against any abuse in the removal of such assets from the claims of creditors.

cy Code accordingly were pure dicta. The *Clark* case did come under the Bankruptcy Code but was decided on alternative grounds in which the noncomparable Tennessee statute was the real basis of decision. These distinguishing factors regarding the *Mendenhall* and *Clark* decisions were in fact noted by the Third Circuit in its decision in *In re Clark, supra,* 711 F.2d at p. 23 (1983).

## CONCLUSION

██ This brings the court to the final issue presented by the record in this case, i.e., are the Keogh Plan funds here involved reasonably necessary for the support of the debtor and his dependents? The only evidence submitted in that regard was the testimony of the debtor as summarized at the outset of this opinion. The trustee did not submit any independent contrary evidence and did not seriously cross-examine the debtor on the economic facts to which he testified. Based upon those facts, and the lack of any realistic prospects for any substantial future earnings above the current level for both the debtor and his wife, I conclude that the Keogh Plan funds here in question are reasonably necessary for support of the debtor and his dependents within the meaning of the cited statute. I adopt for this purpose the "reasonably necessary" standard and definition set out in *In re Flygstad,* supra, at pp. 889–90, and the cases therein cited.

A separate order will be entered denying the trustee's objection and granting the claim of exemption.