**In re Melvin DAMAST, Debtor.**

**Bankruptcy No. 90–1815.**

United States Bankruptcy Court,
D. New Hampshire.

Dec. 27, 1991.

Dennis G. Bezanson, So. Portland, Me., trustee.

Charles A. Russell, Concord, N.H., for debtor.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

In this individual chapter 7 case, the debtor is seeking to either exclude from the estate—or claim as exempt—four retirement plans. Conversely, the trustee seeks to include the plans, totaling over $38,000 dollars, as non-exempt property of the estate. The questions presented are matters of first impression in this district. The Court of Appeals for the First Circuit likewise has not spoken on the subject.

## I. PROCEDURAL CONTEXT

Debtor's original B–4 schedule, "Property Claimed as Exempt," listed the four plans as exempt property under 11 U.S.C. § 541(c)(2) and "pertinent New York and Delaware law." The trustee objected, maintaining that neither applicable federal law nor New Hampshire's statutory exemptions supported the claimed exemptions. After hearing, the Court permitted the debtor to amend his claim of exemption. Debtor's amendment added 11 U.S.C. § 522(b)(2)(A), 26 U.S.C. § 401(a)(13), and N.H.Rev.Stat.Ann. § 512:21(IV), as additional statutory bases supporting exemption.

## II. DESCRIPTION OF PLANS

The four retirement plans originated from the debtor's former employer in New York. Prior to bankruptcy the debtor moved to New Hampshire, where he is a self-employed ophthalmologist. Since moving, the debtor has not made any further plan contributions, but has maintained them with himself as both the beneficiary and the "employer" for the plans.

The debtor has two "Delaware Group Retirement" plans, hereinafter the "Delaware plans," which are profit sharing/money purchase pension retirement plans. The debtor is the plan administrator of the Delaware plans and each contain ERISA-qual-

ifying language that the beneficial interest is neither assignable nor alienable.[1]

A third plan, the "The Presidential Life Insurance Company Prototype Profit–Sharing Plan and Trust," hereinafter the "Presidential plan," is another self-employment retirement plan. Under this plan, the debtor is the employer, sole owner, and beneficiary of the plan. The plan may be terminated at any time. The Presidential plan also contains ERISA-qualifying language.

The fourth plan is the "Delaware Group IRA," hereinafter the "IRA," which is an individual retirement account which is non-forfeitable and can be terminated at any time.

## III. KEY STATUTORY PROVISIONS

The key statutory provisions cited as pertinent to the decision before this Court are as follows:

### 11 U.S.C. § 541(c)(2)

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law— ...

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title ...

### 11 U.S.C. § 522(b)(2)(A)

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ...

Such property is—

(1) property that is specified under subsection (d) of this section, unless the

---

1. The Employee Retirement Income Security Act of 1974 ("ERISA") provides "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Section 401(a)(13) of the Internal Revenue Code also requires anti-alienation and anti-assignment provisions in order for a trust to have "qualified" status for taxation purposes. 26 U.S.C. § 401(a)(13).

State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180-day period than in any other place; ....

### N.H.Rev.Stat.Ann. § 511:2

511:2 *Exemptions.* The following goods and property are exempted from attachment and execution:

I. The wearing apparel necessary for the use of the debtor and his family.

II. Comfortable beds, bedsteads and bedding necessary for the debtor, his wife and children.

III. Household furniture to the value of $2,000.

IV. One cook stove, one heating stove and one refrigerator and necessary utensils belonging to the same.

V. One sewing machine, kept for use by the debtor or his family.

VI. Provisions and fuel to the value of $400.

VII. The uniform, arms and equipments of every officer and private in the militia.

VIII. The Bibles, school books and library of any debtor, use by him or his family, to the value of $800.

IX. Tools of his occupation to the value of $1,200.

X. One hog and one pig, and the port of the same when slaughtered.

XI. Six sheep and the fleeces of the same.

XII. One cow; a yoke of oxen or a horse, when required for farming or teaming purposes or other actual use; and hay not exceeding 4 tons.

XIII. Domestic fowls not exceeding $300 in value.

XIV. The debtor's interest in one pew in any meetinghouse in which he or his family usually worship.

XV. The debtor's interest in one lot or right of burial in any cemetery.

XVI. One automobile to the value of $1,000.

XVII.Jewelry owned by the debtor or his family to the value of $500.

### N.H.Rev.Stat.Ann. § 511:2–a

511:2–a *Nonavailability of Federal Bankruptcy Exemptions.* In accordance with the provision of section 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. § 522(b)), residents of this state shall be prohibited from using the federal exemptions provided in that section. Nothing in this section shall affect the exemptions given to residents of the state by the constitution of New Hampshire and New Hampshire statutory law.

### N.H.Rev.Stat.Ann. § 512:21, *"Exemption from Trustee Process"*

512:21 *List of Exemptions.* The money, rights, and credits of the defendant shall be exempt from trustee process in the following instances, and the trustee shall not be chargeable therefor: ...

IV. Any pension or bounty money of the defendant allowed by any law of the United States before it has come into his actual possession.

## IV. TRUSTEE ARGUMENTS

The trustee's principal argument is that section 541(c)(2)'s operative phrase "applicable nonbankruptcy law," under which a debtor's beneficial interest in a trust is excluded from the estate if transfer of that interest by the beneficiary is restricted, is a limited exclusion applying only to the kind of restrictions on transfers of beneficial interests labelled as spendthrift trusts. Since ERISA and Internal Revenue Code ("IRC") restrictions on the transfer of a beneficial interest in a trust arise under federal law, the trustee concludes the retirement plans are not excluded under sec-

tion 541(c)(2). Alternatively, the trustee argues that even if the restrictions required by ERISA and the IRC for qualifying pension trusts are the equivalent of a spendthrift trust, New Hampshire does not recognize spendthrift trusts.

The trustee also relies on specific terms in the plan documents to support his contention that the plans terminated by their own terms. Subparagraph 5(a) of Article XII of the Delaware plans, "Amendment and Termination," provides: "the Plan will terminate: (a) if the Employer is dissolved or deemed bankrupt or insolvent in appropriate proceedings." Upon termination, all amounts credited in the accounts are to be distributed to the employee. The trustee argues that the bankruptcy filing terminated the plans and any trusts created by the plans. The debtor's interest in the plans' assets was transformed into mere ownership of cash or securities, which according to the trustee, should be turned over to the estate.

The trustee argues that because the debtor is the employer under the Presidential plan and the employer may terminate the plan at any time, the debtor maintained such control over the plan, including the power to terminate the plan at any time and recover all plan assets, that the Presidential plan cannot be excluded under § 541(c)(2).

With respect to the debtor's claimed exemption of the plans under New York law, the trustee argues that even if the plans were established in New York, that state's exemption for trusts, custodial accounts, monies, and other retirement plans established by a corporation and which are qualified under IRC § 401 does not apply to this debtor because he is no longer a New York domiciliary.

Unlike the other three plans, the IRA contains no ERISA anti-alienation or spend-thrift trust language. The IRA document does contain a one sentence declaration that "[t]he applicant's interest in the balance in the Account is non-forfeitable." [2] Distributions from the IRA account can commence at any time and may occur in a single lump sum payment. These features make the IRA nothing more than a savings account according to the trustee.

Furthermore, the trustee argues the IRA is not subject to exemption under either N.H.Rev.Stat.Ann. §§ 511:2 or 512:21(IV), "Exemptions" and "Exemption From Trustee Process" respectively. The trustee argues that an IRA is not exempted from property of the estate because the exemption provided by 512:21(IV) is from trustee *process*, not trustee *execution*. By contrast, New Hampshire's exemption statute for goods and property prohibits both attachment and execution. The trustee maintains that an IRA is neither "pension or bounty money" as that term is used in section 512:21(IV) and, even if it were, section 512:21(IV) does not exempt "pensions" from unsatisfied execution creditors. The trustee believes the debtor is now in "actual possession" of the IRA so that section 512:21(IV) is not an exemption and the trustee is entitled to execute on the IRA.

Lastly, the trustee urges this Court to embrace the dicta of *In re Goff,* 706 F.2d 574 (5th Cir.1983), that the ERISA statute restrictions on alienation and assignment do not create a federal exemption cognizable under 522(b)(2)(A). Relying on *Goff* and other decisions construing section 522(b)(2)(A) by resort to its legislative history, the trustee argues that Congress' failure to include the ERISA statute within its non-exhaustive list of exemptions was an intentional omission signaling congressional intent that ERISA is not a federal exemption under section 522(b)(2)(A).

**2.** The Internal Revenue Code, in 26 U.S.C. § 408(a)(4) defines the term "Individual Retirement Account" to mean a trust created having certain attributes including a provision that "The interest of an individual and the balance in his account is non-forfeitable." However, this provision does not mean that the beneficiary cannot assign the account to a third person nor

does it mean that the beneficiary cannot withdraw the monies. It has been held that it means that the trust fund itself cannot be forfeited to the holding bank or IRA custodian under any claim to the assets in the IRA account. *In re Dunn,* 5 B.R. 156, 158 (Bankr. N.D.Tex.1980). Accord, *Masi v. Ford City Bank & Trust Co.,* 779 F.2d 397, 400–01 (7th Cir.1985).

## V. DISCUSSION

### A. 541(c)(2) AND PROPERTY OF THE ESTATE

█ This case of first impression in this district raises basic questions about the interrelationship of the provisions and purposes of the Bankruptcy Code, ERISA, and state law.

The primary question is whether the four retirement plans are property of the estate. 11 U.S.C. § 541(a)(1) defines property of the estate as: "Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." Subsection 541(c)(2), *supra*, provides an exception to section 541(a)(1)'s broad definition of property of the estate. It provides: "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." *Id.* In other words, assets of a trust which cannot be reached by creditors outside of bankruptcy cannot be reached by a trustee within bankruptcy and thus do not become property of the estate.

There is a split among the circuits as to whether the ERISA statute is "applicable nonbankruptcy law" operating to exclude qualifying pension plans from property of the estate. Courts holding that ERISA-qualifying pension plan trust assets are not property of the estate include *In re Harline*, 950 F.2d 669 (10th Cir.1991); *Velis v. Kardanis*, 949 F.2d 78, 22 BCD 414 (3d Cir.1991); *In re Lucas*, 924 F.2d 597 (6th Cir.1991), *cert. denied de nom. Forbes v. Holiday Corp. Sav. & Retirement Plan*, — U.S. —, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *In re Moore*, 907 F.2d 1476 (4th Cir.1990); see also *Morter v. Farm Credit Services*, 937 F.2d 354 (7th Cir.1991) (hold-

ing that § 541(c)(2)'s phrase "applicable nonbankruptcy law" is not limited to "traditional" state law spendthrift trusts.).[3]

An earlier line of cases accord with the trustee's narrow reading of 541(c)(2), holding that the phrase "applicable nonbankruptcy law" is a limited reference to state spendthrift trust law. *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), cert. denied, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Graham*, 726 F.2d 1268 (8th Cir.1984). *In re Goff*, 706 F.2d 574 (5th Cir.1983).[4]

I must follow that line of cases embracing the emerging view that ERISA-qualified pension plan assets are not property of the estate. This is because decisions reaching this conclusion follow the central tenet of today's Supreme Court, i.e., in cases of statutory construction, if a statute is plain on its face, then it should be applied as plainly written without resort to legislative history. *Toibb v. Radloff*, — U.S. —, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); *Perrin v. U.S.*, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979); *In re Moore, supra; In re Kincaid*, 917 F.2d 1162 (9th Cir.1990) (Fletcher, J., concurring).

The Court finds section 541(c)(2)'s phrase "applicable nonbankruptcy law" unambiguous and to support consideration of all "applicable nonbankruptcy law," not just a state's law of spendthrift trusts. Consideration of all "applicable nonbankruptcy law" calls the ERISA statute into play and its anti-alienation and anti-assignment provisions operate to exclude qualifying pension plan assets from property of the estate.

Any other conclusion would lead to the anomalous result of an ERISA-qualifying pension or similar plan being immune from

---

**3.** The Fourth Circuit affirmed its *Moore* holding in *Shumate v. Patterson*, 943 F.2d 362 (4th Cir. 1991), and extended it to exclude self-settled trusts having ERISA anti-alienation and anti-assignment provisions.

**4.** A two-judge quorum panel in *Matter of Dyke*, 943 F.2d 1435 (5th Cir.1991), in a preemption decision, declined to overrule the statutory interpretation of § 541(c)(2) given in the earlier

*Goff* case, notwithstanding arguably contrary indications by certain language of the Supreme Court in *Mackey v. Lanier Collection Agency, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The panel in *Dyke* took pains to note several times that under Fifth Circuit rules a subsequent *panel* could not overrule an earlier panel decision—only *en banc* action by the full court could do so.

creditor execution outside of bankruptcy but reachable by the same creditors once the debtor has filed a petition. The court in *In re Kincaid*, 917 F.2d 1162 (9th Cir. 1990) followed *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 did hold that neither ERISA nor the Internal Revenue Code create an exclusion under § 541(c)(2) and therefore ERISA trusts must look to state spendthrift law for protection in bankruptcy.[5] But in so ruling, the court noted: "[w]e recognize a certain incongruity in the notion that only ERISA's anti-alienation provisions offer protection until bankruptcy, and only state spendthrift provisions do so in bankruptcy.".

It should also be noted that those courts ruling from a few scattered legislative references that § 541(c)(2) should be limited to state spendthrift trusts are in effect ignoring the entire legislative context of not only the Bankruptcy Code but the ERISA statute as well. The Court of Appeals in the *Moore* decision made the point succinctly as follows:

> In addition to being faithful to the language of both the Bankruptcy Code and ERISA, this conclusion furthers ERISA's broader purpose of ensuring uniform treatment of pension benefits throughout the country. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 15–17, 107 S.Ct. 2211, 2219–20, 96 L.Ed.2d 1 (1987). "ERISA was designed to ensure that substantive pension benefits not be subject to the vagaries of state law." *PPG Industries Pension Plan A v. Crews*, 902 F.2d 1148 (4th Cir.1990). Our holding ensures that the security of employee retirement benefits will not depend on the particularities of state spendthrift trust law. Were it otherwise, a state that did not recognize spendthrift trusts at all could nullify the anti-alienation provisions of ERISA—a result which is contrary to ERISA's general preemptive force. *See* 29 U.S.C. § 1144(a).

Furthermore, our holding avoids the specter of a bankruptcy trustee disqualifying an entire plan from tax exempt status by seeking turnover of a single bankrupt's interest in the plan. Under the trustee's interpretation, ERISA does not withhold the debtor's interest in an ERISA-qualified profit-sharing and pension plan from the bankruptcy estate. However, a plan's ERISA-qualification and tax exempt status depend on compliance with the anti-assignment provisions in 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d)(1). If § 541(c)(2) does not recognize ERISA as "applicable nonbankruptcy law" that operates to exclude pension interests from the bankrupt's estate, then the plan's anti-alienation provisions will be violated and the plan may be subject to disqualification and loss of tax-exempt status. *See McLean* [*v. Cent. States, S. & S. Areas Pen. Fund*] 762 F.2d [1204] at 1206 (recognizing the IRS position that payover of ERISA funds to Chapter 13 bankruptcy trustee would cause plan to lose its ERISA qualification and tax exempt status). We do not think Congress intended such a result. We can best harmonize ERISA, the Bankruptcy Code, and the Internal Revenue Code by reading "applicable nonbankruptcy law," 11 U.S.C. § 541(c)(2), to include ERISA.

The Supreme Court itself in *Connolly v. Pension Benefit Guarantee Corp.*, 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986), noted the comprehensive aspect of ERISA, particularly from the standpoint of its underlying benefit insurance provisions:

> Congress enacted ERISA in 1974 to provide comprehensive regulation for private pension plans. In addition to prescribing standards for the funding, management, and benefit provisions of these plans, ERISA also established a system of pension benefit insurance. This "Comprehensive and reticulated statute" was designed to ensure that employees and their beneficiaries would not be deprived of anticipated retirement

---

**5.** However, the panel sitting in *Kincaid* reversed the Bankruptcy court and Bankruptcy Appellate Panel, finding each had "mischaracterized" the plan, a deferred salary plan, which it held to be a spendthrift trust and therefore the debtor's interest was not property of the estate. *Kincaid*, 917 F.2d at 1169.

benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.... Congress wanted to guarantee that 'if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it.'

475 U.S. at 214, 106 S.Ct. at 1020, quoting *Pension Benefit Guarantee Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720, 104 S.Ct. 2709, 2713, 81 L.Ed.2d 601 (1984).

■ The Court in the present case also rejects the trustee's further "control" argument pertaining to the § 541(c)(2) issue. The trustee argues that the extent of the debtor's control over the four plans, with the power to terminate them and "cash out" the funds, nullifies debtor's characterization of the plans as pensions. I disagree. "Control" of this kind is not tantamount to the power to assign or alienate plan benefits in contravention of ERISA's statutory restrictions.[6] Furthermore, the possibility that the debtor may terminate the plan and "cash out" is not a basis for therefore concluding the debtor's creditors can lay direct claim to the same assets. The assets were pension assets before the bankruptcy petition and under this ruling could never have become property of the estate. The act of filing a bankruptcy petition does not change the nature of the plans' assets.

I realize that this decision is contrary to a sister court determination. In *In re Nadler*, 122 B.R. 162 (Bankr.D.Mass.1990), the court held ERISA pension plans were property of the estate but exempt under section § 11 U.S.C. 522(d)(10)(E), the federal exemption section available to debtors in states that have not "opted-out" of the federal exemption scheme. The *Nadler* court reasoned that section 541(c)(2) did not cover pension plans because section 522(d)(10)(E) specifically exempted them. The 522(d)(10)(E) exemption is not available to this debtor because New Hampshire is an "opt-out" state that specifically prohibits use of the federal exemptions under § 522(d) of the Bankruptcy Code. N.H.Rev.Stat.Ann. 511:2-a (1990).[7]

### B. 522(b)(2)(A) EXEMPTION

■ Although this Court holds that ERISA-qualifying pension plans are not property of the estate, the Court addresses debtor's alternative exemption argument because debtor's amended B–4 schedule added 11 U.S.C. § 522(b)(2)(A), which applies in "opt-out" states as an independent statutory basis for exemption had this Court held the four plans to be estate property. The trustee counters that neither

---

**6.** The Court of Appeals in *Velis v. Kardanis, supra,* disposed of the "control" argument as follows: "It is argued that Congress cannot have intended to enable persons to place their assets beyond the reach of creditors by placing them in a trust for their own benefit, except to the limited extent that the laws of the various states would uphold the spendthrift provisions.... But there can be no doubt that Congress has expressed a deep and continuing interest in the preservation of pension plans, and in encouraging retirement savings.... We believe it reasonable to conclude that Congress intended to provide protection against the claims of creditors for a person's interest in pension plans, unless vulnerable to challenge as fraudulent conveyances or voidable preferences. Presumably, substantial or unusual contributions to a self-settled pension trust made within the preference period, or with intent to defraud creditors, should receive no protection under either § 541(c)(2) or § 522(d)(10)(E)."

The last portion of the passage quoted above addresses the underlying concern in all of the cases—whether spoken or unspoken—that "self-settled" pension plans created in contemplation of bankruptcy could present a serious abuse of the bankruptcy system. However, as there noted, and as I myself pointed out in *In re Lawrence,* 57 B.R. 727, 730–31 (Bankr.N.D.Iowa 1986), any such abuses are subject to review and possible nullification under § 548 and other provisions of the Bankruptcy Code.

**7.** The statute reads: "In accordance with the provision of section 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. § 522(b)), residents of this state shall be prohibited from using the federal exemptions provided in that section." In actuality, the federal exemptions are listed in 522(d). Since states are only authorized by § 522(b) to prohibit use of the "federal exemptions" encompassed in § 522(d), as referenced in § 522(b)(*l*), the New Hampshire statute should be read accordingly. A state under the Supremacy Clause could not prohibit use of § 522(b)(2)(A).

§§ 541(c)(2) or 522(b)(2)(A) support exemption of any of the plans. The relevant portion of section 522 provides:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection ...
>
> Such property is—
>
> (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
>
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place;

11 U.S.C. § 522(b)(2)(A).

Dicta in *In re Goff*, 706 F.2d 574 (5th Cir.1983), originated a line of cases holding that ERISA-qualifying pensions are not subject to exemption under § 522(b)(2)(A).[8] I have already expressed reservation about *Goff* and its overly broad dicta. *In re Lawrence*, 57 B.R. 727 (Bankr.N.D.IA 1986) (Yacos, J., sitting by designation); *see also In re Komet*, 104 B.R. 799 (Bankr. W.D.Tex.1989).[9]

Several Bankruptcy courts have adopted the view that 522(b)(2)(A) does provide an exemption for ERISA-qualifying plans; *In re White*, 131 B.R. 526 (Bankr.D.Mass. 1991). *In re Starkey*, 116 B.R. 259 (Bankr. D.Colo.1990); *In re Messing*, 114 B.R. 541 (Bankr.E.D.Tenn.1990); *In re Burns*, 108 B.R. 308 (Bankr.W.D.Okla.1989). The reasoning of those courts is persuasive and will be applied in this District.

Like section 541(c)(2)'s phrase "applicable nonbankruptcy law," 522(b)(2)(A)'s phrase "exempt under federal law" is also unambiguous and supports consideration of *all* related federal law. Consistent with this Court's earlier conclusion is the conclusion that section 522(b)(2)(A) cannot properly be limited by the narrowing construction urged by the trustee. As indicated, one sister court in this Circuit has ruled that ERISA is federal law under section 522(b)(2)(A) exempting qualified pensions and similar plans from the estate. *In re White, supra.*

The Court concludes that even if the ERISA qualified pension plan assets in question were property of the estate, the anti-alienation and anti-assignment requirements of 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d)(1) create a federal exemption under section 522(b)(2)(A).

### C. IRA

■ Having addressed the basic question of whether ERISA-qualified pension plan assets are excluded and/or exempt from property of the estate, the Court must next determine whether an IRA is an ERISA-qualified pension plan or is otherwise exempt under state law.

Much legal analysis has gone into differentiating pensions from IRAs for purposes of exemption analysis. *See, e.g., In re Spandorf*, 115 B.R. 415 (Bankr.D.Conn. 1991) (and cases cited therein); *In re Talbert*, 15 B.R. 536 (Bankr.W.D.La.1981); *In re Iacono*, 120 B.R. 691 (Bankr.E.D.N.Y. 1990); *In re Velis*, 123 B.R. 497 (Bankr. D.N.J.1991), *rev'd*, 949 F.2d 78, 22 BCD 414 (1991). But, as the court in *In re Worthington*, 28 B.R. 736, 739 (Bankr.W.D.Ky. 1983), observed, there are as many similarities as differences between the two. The *Worthington* court wrote:

> Each of the specifics named as well as the IRA program has the common theme of deferred tax liability on assets presently owned, with the ostensible purpose

---

8. *See, e.g., In re Daniel*, 771 F.2d 1352, 1361 (9th Cir.1985); *In re Lichstrahl*, 750 F.2d 1488, 1492 (11th Cir.1985); *In re Graham*, 726 F.2d 1268, 1274 (8th Cir.1984).

9. The holding in *Komet* probably does not survive *Matter of Dyke,* supra, fn. 4.

to supplement retirement income in the future to provide benefits by reason of age, illness, disability or death. There is no question but that the IRA account was a qualified plan pursuant to the Internal Revenue Code, 26 U.S.C. § 408(a) on the date the petition was filed.

\* \* \* \* \* \*

It is well recognized that IRA accounts do possess these traits and that benefits through contributions of a tax-deferred nature do flow to the debtor and his dependents under a formalized plan conditioned upon a certain prospective elections or future events and mandating that such accounts to be deemed a qualified plan must adhere to rigid requirements monitored by the Internal Revenue Service.

\* \* \* \* \* \*

It must be noted that the criteria relied upon by the trustee to justify denial of exempt status is without foundation. Debtor control over assets is not the determinant of whether exempt status exists.

\* \* \* \* \* \*

It is further recognized that many of the expressly exempt plans set forth in the statute repose in the participant certain controls and electives as exist in qualified IRA plans, and accordingly, the legislature in the enactment did not deem such retained elective controls impediments to the establishment of their exempt status.

28 B.R. at 739.

In *In re Cilek*, 115 B.R. 974 (Bankr. W.D.Wis.1990), the court made similar observations:

"Those courts which distinguish IRA's from other retirement plans because of the debtor's control over the IRA mistakenly apply a concept helpful in determining the property of the estate under the Act to the unrelated determination of exemptions under the Code. . . .

Accordingly, just as a claimed exemption for a homestead or motor vehicle shall not be denied because the debtor controls his house or his car, a claimed exemption for an IRA shall not be denied because the debtor controls his IRA." *Cilek*, 115 B.R. at 987. The *Worthington* and *Cilek* opinions demonstrate that a colorable argument can be made that IRAs conforming to Internal Revenue Code ("IRC") § 408(a) are similar enough to ERISA pension plans qualifying under IRC § 401(a) so as also to be exempt under section 522(b)(2)(A).

While *Worthington* and *Cilek* provide insightful logic, especially on the emptiness of decisions founded solely on debtor's "control" of a particular asset, these cases fail to convince this Court that IRAs are pensions or similar plans for exclusion and exemption purposes.

It is true that the case decisions often speak loosely as to whether an IRA account is "ERISA-qualified" but there is nothing in Title I of the Employment Retirement Income Security Act of 1974, Public Law No. 93–406, 88 Stat. 829 (codified at 29 U.S.C. §§ 1001–1461 (1991)), which covers IRA accounts within its provisions *protecting employee benefits*. Title II of ERISA included the correlative amendments to the Internal Revenue Code, regarding *taxation* of pension plans, and it is only *those* provisions (now codified in 26 U.S.C. § 401 *et. seq.*) which make reference to qualifying IRA accounts. The Title II provisions do not include any provisions protecting IRA benefits. See *Lauck v. International Union*, 655 F.2d 423, 424, fn. 1 (D.C.Cir.1981).

IRA accounts accordingly can come under the language "property that is exempt under Federal Law" under Bankruptcy Code § 522(b)(2)(A) only if there is something in Title 26 itself that would provide such exemption. However, as noted above, at footnote 2, the only Title 26 provision arguably applicable, i.e., 26 U.S.C. 401(a)(4) requiring a "non-forfeitable" provision, does not constitute an exemption or protection against third party creditors other than the depository institution itself.

State courts have generally held that IRAs are subject to judgment creditor garnishment. *Halliburton Co. v. Mor*, 231 N.J.Super. 197, 555 A.2d 55 (1988); *Smith*

*v. Winter Park Software Inc.*, 504 So.2d 523 (Fla.Dist.Ct.App.1987); *Rowland v. Strickland*, 294 S.C. 119, 362 S.E.2d 892 (App.1987); *Long Island Jewish Hillside Medical Center v. Prendergast*, 134 Misc.2d 93, 509 N.Y.S.2d 697 (1986). By contrast, the Supreme Court has stated that ERISA prohibits state law garnishment of pension benefits. *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *see also Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).

Both 29 U.S.C. § 1056(d)(1) and 26 U.S.C. § 401(a)(13) require that ERISA pension plan assets be neither assignable nor alienable. The purpose of these restrictions is to guarantee the preservation of pension benefits so they will be available at retirement. *In re Komet*, 104 B.R. 799, 803 (Bankr.W.D.Tex.1989). Because no similar restraint on alienation or assignment is imposed on IRAs, as developed above, they do not qualify as pensions or similar plans as defined under 26 U.S.C. § 401(a)(1)–(30) and therefore are not exempt under 11 U.S.C. § 522(b)(2)(A). Hence if an IRA is to be exempted, it must be because New Hampshire state law so provides.

New Hampshire has "opted out" of the federal statutory exemption scheme and New Hampshire does not specifically "exempt" pensions or IRAs. N.H.Rev. Stat.Ann §§ 511:2–a, 511:2. Cognizant of this fact, the debtor argues that N.H.Rev. Stat.Ann. § 512:21(IV), "Exemption from trustee process," is a bankruptcy exemption cognizable by section 522(b)(2)(A)'s provision exempting "any property that is exempt under Federal Law ... or state or local law...." According to the debtor, section 512:21(IV) is "picked up" by 11 U.S.C. § 522(b)(2)(A) which operate in combination to exempt the IRA.

This conclusion rests on at least two assumptions: a) that an IRA is "pension or bounty money" under New Hampshire state law; b) that N.H.Rev.Stat.Ann. § 512:21(IV) is a bankruptcy exemption for pension or bounty money.

The Court's research on section 512:21(IV) leads to the conclusion that it is not a bankruptcy exemption. That statutory provision involves "trustee process" which in New Hampshire is an equitable proceeding in which the rights of the parties are determined by equitable principles. *Walsh v. Boulanger*, 107 N.H. 458, 225 A.2d 185 (1966). As noted in the *Walsh* decision "The broad scope of our statutes allowing attachment and trustee process to issue without the existence of special circumstances 'finds few parallels in other jurisdictions.'" 107 N.H. at 459, 225 A.2d 185. Generally, it can be said that RSA 512:21 provides an exemption only from "trustee process" and in New Hampshire that normally is the legal process by which a judgment debtor's wages are garnished. See, e.g., *Redington v. Dunn*, 24 N.H. 162 (1851); *Garside v. Colby*, 72 N.H. 544, 58 A. 50 (1904); *Opinion of the Justices*, 121 N.H. 531, 538, 431 A.2d 144 (1981). Thus, debtor's IRA is non-exempt property of the estate in New Hampshire.

## CONCLUSION

ERISA-qualifying pension plans shall not be considered property of the estate in this jurisdiction. However, IRA's shall be considered property of the estate and no exemption exists for them.