BAMCO 18, a partnership, in its own right and as a limited partner in Hospitality Associates of Tappan Zee, a limited partnership, Plaintiff,

v.

R. Bruce REEVES, MPI Corporation, in its own right and as general partner in Hospitality Associates of Tappan Zee, a limited partnership; Hospitality Associates of Tappan Zee, a limited partnership; and D.G. Management, Inc., Defendants.

No. 87 Civ. 5496 (RWS).

United States District Court, S.D. New York.

July 5, 1989.

Thaddeus Holt, New York City, for plaintiff.

Gorman & Steinglass, New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiff Bamco 18 ("Bamco") has moved for summary judgment in accordance with Rule 56, Fed.R.Civ.P. against defendant MPI Corporation ("MPI"), defendant R. Bruce Reeves ("Reeves") and declaring a constructive trust over property of defendant Hospitality Associates of Tappan Zee ("Hospitality").

The motion was argued and fully submitted on April 12, 1989. On May 31, 1989 Reeves filed for the protection of the Bankruptcy Court under Chapter 11. On June 5, 1989, as president and sole shareholder of MPI, he caused MPI as general partner of Hospitality to file on behalf of Hospitality seeking the protection of the Bankruptcy Court for Hospitality, also under Chapter 11. The automatic stay under 11 U.S.C. § 362(a) (1978) is applicable therefore to Reeves and Hospitality.

The gravamen of Bamco's claim is that Reeves in a February 8, 1985 letter misrepresented that he had $500,000 in "equity" in the partnership that became Hospitality, that contrary to his representation Reeves's capital account was deficient on March 1, 1985 as well as the account of the partnership, that Reeves's withdrawal of $350,000 from Hospitality was based upon a false representation, namely that he had made an initial cash contribution of $175,-000, and finally that he failed to make subsequent contributions in cash or property as required by Amended and Restated Agreement of Limited Partnership of Hospitality Associates of Tappan Zee (the "Agreement").

As a result of the bankruptcy stay, these motions for summary judgment against Reeves to enforce these claims must be dismissed at this time with leave to renew on the original papers when and if it is appropriate to do so.

MPI, however, is not in bankruptcy and defended the motions. The motion for summary judgment is granted with respect to Bamco's claim for accounting against MPI.

### Prior Proceedings

After the bankruptcy filings described above, on June 12, 1989 Bamco sought and obtained a preliminary injunction removing MPI as general partner of Hospitality. Findings of fact and conclusions of law were filed. The relationship and history of the parties was there described. Familiarity with those findings is presumed and adopted here.

### Additional Findings

On March 6, 1985, Reeves, MPI, and Bamco executed the Agreement. Under § 6.2 of the Agreement, Bamco and Reeves agreed that as limited partners in Hospitality they would make initial capital contributions of $575,000 and $175,000, respectively. Under § 7.1 of the Agreement, Bamco and Reeves were required to make their initial capital contributions in cash.

MPI was granted a 1% interest in the partnership as the general partner of Hospitality, Bamco was granted a 59.4% interest, and Reeves was granted a 39.6% interest. The 40.6% partnership interest of Reeves and MPI was based on the representation that Reeves would make an initial capital contribution of $175,000 in cash and MPI would use the $240,000 loan from

Bamco for working capital and renovation costs, as provided in the Sources and Uses of Funds Statement in Exhibit B to the Agreement.

The Agreement entrusted the business and assets of the partnership to MPI as general partner. Among other things:

1. Under § 3.2(b) of the Agreement, MPI was not permitted to "sell, assign, transfer, exchange or otherwise dispose of Partnership property other than in the ordinary course of business" without the "prior written consent of a Majority in interest of the Limited Partners...."

2. Under § 4.11 of the Agreement, MPI and Reeves were barred from making "use of funds or property of the Partnership in any way other than for the business or benefit of the Partnership";

3. Under § 5.1 of the Agreement, MPI was required to keep "true and complete books of account in which shall be entered fully and accurately each transaction of the Partnership"; and

4. Under § 3.1(f) of the Agreement, MPI was required to "collect ... claims ... of ... the Partnership...."

A series of representations and warranties previously made to Bamco were incorporated in the Agreement, including the following:

1. In § 4.5(a) of the Agreement, MPI represented and warranted that "Exhibit B hereto completely and correctly sets forth all sources and proposed uses of funds in connection with financing the Project...."

2. In § 4.5(f), MPI represented and warranted that MPI "has a net worth, as at the date hereof, of not less than $500,000, excluding its interest in the Partnership."

3. In § 4.5(i)(vi), MPI represented and warranted that "[f]rom September 10, 1984 to the date of execution hereof, the Partnership has not.... suffered any material adverse change in its financial condition, properties, business operations or condition (financial or otherwise)...."

4. In § 4.5(q), MPI represented and warranted that "neither this Agreement nor any other document, certificate or statement furnished to the Limited Partners by or on behalf of the General Partner or the Partnership in connection with the transactions contemplated hereby or by the Letter of Intent dated February 8, 1985 ... (including any placement memorandum or offering circular) contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein and therein not misleading."

On March 7, 1985 Bamco contributed $575,000 in cash to the partnership by wire transfer to Hospitality in satisfaction of its obligation under § 6.2 of the Agreement. On the same day, Bamco advanced $240,000 by wire transfer to MPI as a loan to fund the renovation and working capital requirements of the partnership as contemplated by the Sources and Uses of Funds Statement in Exhibit B to the Agreement.

On March 8, 1985, Reeves caused MPI to create an account receivable of $150,000 on the books of the partnership and to enter a corresponding credit to his capital account to satisfy his obligations as a limited partner in Hospitality. On the same day, Reeves caused MPI to transfer $350,000 from the account of Hospitality to his own personal account as a withdrawal of previously contributed capital. In fact, the capital account of Reeves was deficient by $341,950 prior to the time of the closing.

The $240,000 loan which Bamco advanced to MPI on March 7, 1985 was not used for partnership purposes as required by the Sources and Uses of Funds Statement. When asked under oath at his deposition whether and in what form MPI made the $240,000 loan available to Hospitality, Reeves testified there was no "obligation" to make the funds available, but if there was, the amount of affiliate "loans" to Hospitality exceeded $240,000. When

asked directly on the stand at the January 29, 1985 preliminary injunction hearing whether the $240,000 was devoted to the uses of the partnership, Reeves testified that he "could not comment whether it was or not ... I do not recall."

Because of an undisclosed working capital deficiency of $548,543, the diversion of $350,000 in cash by Reeves as a withdrawal of previously contributed capital and the failure of MPI to use the $240,000 loan from Bamco for working capital and capital improvement purposes, the $815,000 invested by Bamco on March 7, 1985 was unavailable for the purposes specified in the Sources and Uses of Funds Statement set forth in Exhibit B to the Agreement.

In or around the middle of April 1985, Reeves recommended that the partnership raise additional funds to finance what he said were additional capital improvement projects which would make the property more competitive in the marketplace, including the installation of a public restaurant and bar, a spa and exercise room, and a laundry room to cut operating costs. Reeves also advised that the existing renovation program was affecting revenues more adversely than expected so that additional working capital was also required to maintain operations until the capital improvement projects were completed.

At the recommendation of Reeves and MPI, the partnership attempted to meet the additional funding requirements identified by Reeves in April 1985 by borrowing $550,000 from ITT Industrial Credit Corporation. Under the terms of the loan, Bamco was required to deliver a standby Letter of Credit in favor of ITT to guarantee its $330,000 share of the liability assumed by the partnership. According to Reeves, $400,000 of the ITT loan would be used to fund the additional capital improvement projects and $150,000 would be used for working capital.

On May 13, 1985, the outside auditors of the partnership, Pannell Kerr Forster ("PKF") delivered a draft report on the December 31, 1984 financial statements of Hospitality to MPI and Reeves, but not to Bamco. The draft report stated, among other things, that the "ability of the Partnership to collect unpaid capital contributions" or "obtain additional" capital "could not be determined at this time" and that, as a result, "the Partnership may be unable to continue in existence." The audit report on the December 31, 1984 financial statements of Hospitality was not issued by PKF until September 19, 1986, eighteen months after Bamco acquired its limited partnership interest. At the time the report was issued in 1986, the reference to the unpaid capital contributions had been deleted from the report.

Since most of the ITT loan was supposedly being used to finance additional capital improvements to the property, it did not cure the working capital deficiency of Hospitality and additional funds were still required by Hospitality to replace the money looted from the partnership after the closing. As a result, MPI made a series of capital calls to the limited partners in 1985 and 1986 pursuant to § 6.3 of the Agreement. Between April 15, 1985 and September 30, 1986, Bamco advanced an additional $845,000 in cash to Hospitality pursuant to the capital calls of the general partner. The total amount of capital contributions and cash advances which Bamco made to the partnership through December 31, 1988 was $2,144,298.33.

Throughout 1985, Reeves, who serves as president and sole stockholder of MPI, represented orally and in writing to Bamco that he was contributing his pro rata share of the capital calls in cash and that he was therefore entitled to maintain his existing limited partnership interest in Hospitality. Reeves specifically represented to Bamco that he had paid his share of a $41,667 capital call which MPI made on or about April 15, 1985 and a $450,000 capital call which MPI made on or about August 15, 1985. Reeves in fact did not contribute his pro rata share of either the April 15, 1985 or the August 15, 1985 capital calls of MPI. Instead, Reeves caused MPI to create an account receivable in the amount of $156,667 on the books of the Partnership and to enter a corresponding credit to his capital

account in purported satisfaction of his obligations under § 6.3 of the Agreement.

After repeated requests, Reeves finally began supplying Bamco with unaudited monthly financial statements for the Partnership in the late spring of 1985. The financial statements provided by Reeves purported to show that the capital contributions of the limited partners had been funded as required by the Agreement without disclosing that the capital account of Reeves consisted exclusively of unpaid accounts receivable.

At the end of December 1985 or in early January 1986, MPI distributed monthly financial statements for the period ending November 30, 1985 which showed, among other things, that accounts receivable had increased from $303,135 as of October 31, 1985 to $677,891 as of November 30, 1985 and that amounts due affiliates increased from $197,119 to $822,311 during the same period. When asked to explain the sudden increase in these items, G. Robert Wells, Jr., a senior vice president of MPI, advised Voce of Bamco in writing on January 6, 1986 that they were adjustments required "to accurately reflect ... what occurred" when the capital account of the Partnership was originally established. According to Wells, the original $500,000 in Partnership capital was contributed by Seever Associates, a related entity controlled by Reeves, and not Reeves personally. Since Reeves, not Seever, withdrew $350,000 at the time of the closing, Wells explained, Reeves owed the Partnership $350,000, and a receivable was therefore created to reflect his debt to the Partnership. Wells further explained that because the Partnership still owed Seever the $500,000 in capital Seever had "originally contributed," a $500,000 credit was established in its favor. However, The PKF workpapers fail to establish any "original" capital contribution of $500,-000 by Seever, Reeves, MPI, or any other affiliate of Reeves.

PKF, regardless of its working papers, did grant an accounting treatment which netted Reeves's capital accounts and the advances of his affiliates. However, whatever the amount of Reeves's cash advances and fees for services rendered may have been, they were not recorded as capital contributions to Hospitality but treated as "unsecured obligations of the partnership" on the books and records of Hospitality. As Reeves frankly advised this court last year, "since the advances made by my affiliates are on a demand basis, I could merely demand these loans immediately which would trigger a voluntary or involuntary bankruptcy" of the Partnership.

The actual "capital structure" of the Partnership as of February 28, 1985, the day before Bamco acquired its limited partnership interest, was determined by PKF as part of its "subsequent events" review of the December 31, 1984 financial statements. The PKF determination, which was based on the financial records of Hospitality prepared and maintained by Reeves and MPI, showed that at the time of the closing, the capital account of Reeves was deficient by $341,950 and the capital account of the Partnership as a whole was deficient by $333,404. On May 5, 1985, Reeves represented to PKF in writing that the financial statements of Hospitality, which carried the affiliate advances as debts and showed a deficiency in the capital accounts, "properly recorded" all "[t]ransactions with related parties and related amounts receivable or payable."

Reeves also acknowledged that he did not make his subsequent capital contributions in 1985 in cash or property, but created another account receivable, this time in the amount of $156,667, which was to "offset" the amount of payables due to affiliated entities.

*Conclusion*

Summary judgment is authorized if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of proving that no

genuine issue of material fact exists. *See id.* at 247–48, 106 S.Ct. at 2509–10; *Corselli v. Coughlin*, 842 F.2d 23 (2d Cir.1988). All doubts are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1988); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). The Supreme Court recently has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The facts set forth above are derived almost entirely from the documentary evidence submitted. Summary judgment is therefore appropriate.

The "offsetting" payables approach adopted by MPI and Reeves violated § 93 of the New York partnership law which required that capital contributions be made in cash or property, but not in services. A substantial portion of the "payables" which were offset by the accounts receivable consisted of fees for services rendered, including consulting fees, management fees, finders fees, construction fees, and "overhead" charges for payroll, administration, and data processing services rendered by MPI, none of which qualified as a contribution of cash or property to the Partnership.

Apart from violating § 93 of the New York Partnership Law, the "offsetting" payables practice also violated the clearly defined and limited procedures for making capital contributions specified in the Agreement. Reeves, therefore, did not make his initial capital contribution in cash as required under § 6.2 and § 7.1 of the Agreement. Under § 6.4 of the Agreement, contributions besides cash or property required the written consent of Bamco. If Reeves wanted to contribute his share of

"risk" capital for the venture by "offsetting" or even writing-off bills for "services" rendered, Reeves and MPI were required to disclose the practice to Bamco and obtain its approval in writing.

Because MPI violated the capital contributions requirements of the Agreement, Bamco is entitled to summary judgment granting an accounting, *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978).

Bamco's motion for summary judgment against Reeves and Hospitality is denied with leave granted to renew at a later appropriate time. Its motion against MPI for summary judgment seeking an accounting is granted.

Submit judgment on notice.

It is so ordered.