**In the Matter of Arthur R. SEABORNE, Debtor.**

**CITY FEDERAL SAVINGS BANK, Plaintiff,**

v.

**Arthur R. SEABORNE, Defendant.**

**Bankruptcy No. 88–2165–8B7.
Adv. No. 88–253.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 2, 1989.

Timothy W. Gensmer, Sarasota, Fla., for plaintiff.

Randall W. Tayler, Sarasota, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 case is a complaint filed by Plaintiff, City Federal Savings Bank (City Federal) to determine the dischargeability of a debt pursuant to Title 11 U.S.C. § 523(a)(2)(A). The Court reviewed the record, heard testimony and argument of counsel, and finds the relevant facts to be as follows:

Debtor, Arthur R. Seaborne (Seaborne) is the executive vice president and sole shareholder of South Corp. Real Estate Services, Inc., a Florida corporation, and general partner of North Village Professional Center Limited (North Village), a Florida limited partnership. Seaborne sought from City Federal a loan in the amount of $3,150,000.00 for the purchase of the North Professional Center, an office building located in Tampa, Florida. The limited partnership was purchasing the building. Seaborne was arranging the transaction for North Village.

City Federal agreed to loan North Village the money pursuant to the terms of the commitment letter issued by City Federal on September 17, 1986. The terms required North Village to execute and deliver to City Federal a promissory note, mortgage, security agreement, UCC–1 Financing Statement, assignment of leases and rents, borrower's affidavit and waiver of defenses. In addition, North Village was required to 1) "deliver estoppel certificates to be signed by each of the present tenants of the project ... evidencing a 95% occupancy rate and a gross annual income of not less than $438,900.00", and 2) deliver "partnership participation certificates executed by not less than 50% of the total tenants, which certificates must obligate not less than 50% of the total tenants to become limited partners of the borrower, North Village." Through these documents City Federal sought to ensure its ability to proceed directly against the tenants (limited partners) if there was a default.

Seaborne accepted the commitment letter on behalf of North Village on February 9, 1986. He then delivered to City Federal the estoppel certificates, subscription agreements, leases, and lease modification agreements (hereafter called "closing documents") that were executed by the named limited partners, thus fulfilling the terms of the commitment letter. On October 31,

1986, City Federal loaned North Village $3,150,000.00.

Seaborne admitted at trial that at the time he delivered the closing documents to City Federal, he knew some of the limited partners had no intention of making payments to North Village pursuant to the terms of the leases which they signed. He also admitted only two persons from the list of alleged limited partners actually became limited partners even though the alleged limited partners signed partnership certificates.[1] At trial, Glen P. Swindler and Robert L. McNaughton were the only alleged partners to testify. They admitted signing the limited partnership agreements without reading them, and that they did not intend to pay any money to the limited partnership nor become limited partners. The other alleged limited partners on the list did not make payments to North Village pursuant to the executed documents.

Thereafter, North Village defaulted on the loan to City Federal by failing to make the monthly payments pursuant to the promissory note and mortgage. City Federal filed a foreclosure action against North Village and Seaborne in the State Court and obtained final judgment of foreclosure on June 5, 1987 in the amount of $3,391,390.08 including interest and fees.

On April 8, 1988, Debtor filed a voluntary petition for bankruptcy pursuant to Title 11 U.S.C. Chapter 7. City Federal now brings this action to except any deficiency debt of Seaborne from discharge pursuant to Title 11, U.S.C. § 523(a)(2)(A). Three issues are presented to the Court: 1) whether the closing documents constitute "a *statement* respecting the Debtor's or an insider's financial condition." If they are considered a statement respecting the Debtor's or insider's financial condition, the proper cause of action is under Section 523(a)(2)(B), not Section 523(a)(2)(A). Thus, City Federal's sole cause of action under Section 523(a)(2)(A) would be barred; 2) whether City Federal relied on the closing documents before loaning North Village the money to purchase the office building; and 3) whether Seaborne is personally liable for the deficiency debt even though he is not personally liable on North Village's promissory note and mortgage to City Federal because it is nonrecourse indebtedness.

### I.

Seaborne admits giving City Federal false closing documents while trying to obtain the loan. He stated he was aware some of the people who signed these documents had no intention of becoming limited partners or paying rent according to the terms of the documents. However, Seaborne contends City Federal sued under the wrong Code provision. He argues inasmuch as the closing documents relate to North Village's financial condition, City Federal should have sued under Section 523(a)(2)(B), the provision that solely pertains to the financial condition of the debtor or an insider. However, Section 523(a)(2)(B) is more limited than Seaborne contends.

Section 523(a)(2)(B) pertains to a false financial statement denoting the financial condition of the debtor or an insider. Rep. Edwards and Sen. DeConcini stated in the Congressional Record Statements (Reform Act of 1978):

> ... Subparagraph (A) is mutually exclusive from subparagraph (B). Subparagraph (B) pertains to the so-called false *financial statement.* In order for the debt to be nondischargeable, the creditor must prove that the debt was obtained by use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for obtaining money, property, services, or credit reasonably relied; (iv) that the debtor caused to be made or published with intent to deceive ... Section 523(a)(2)(B) is explained in the House Report. Under Section 523(a)(B)(i) a discharge is barred only as

---

[1] Another provision of the commitment letter prohibited secondary financing of the property. Seaborne breached the secondary financing provision by giving the seller of the building a promissory note for $300,000.00 and a quit claim deed to seller's attorney as security without informing City Federal of this transaction.

to that portion of a loan with respect to which a false *financial statement* is materially false. (emphasis added)

124 Cong.Rec. H11095–96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978); *reprinted in* Norton, *Norton Bankruptcy Law And Practice*, 397–398 (1988–1989).

■ Section 523(a)(2)(B) is meant to pertain to a specific type of financial statement, one that specifically states a debtor's or insider's net worth. *See e.g., Brigadier Homes & U.S. Homes Acceptance Corp. v. Hert,* 81 B.R. 638 (Bankr.N.D.Fla.1987). In addition, the financial statement need not be a formal financial document such as commercial or banking institutions require, but a type of financial statement describing the financial condition of the debtor. *Household Finance Corp. v. Howard (In re Howard),* 73 B.R. 694, 702 (Bankr.N.D. Ind.1987), citing *Butler v. Roberts (In re Roberts),* 54 B.R. 765, 770 (Bankr.N.D. 1985).

■ While it is true the closing documents were being used to denote North Village's financial condition in the broadest sense, they are not literal nor actual financial statements denoting the Debtor's financial condition, as Congress intends. Thus, the misrepresentations in the closing documents fall in the general category of fraud in Section 523(a)(2)(A), "fraudulent misrepresentations *other* than a *statement* respecting the debtor's or an insider's financial condition." Therefore, City Federal's complaint is sufficient under Bankruptcy Code Section 523(a)(2)(A).

## II.

■ To except a debt from discharge under Title 11 U.S.C. § 523(a)(2)(A), Plaintiff, City Federal, must prove the following elements by clear and convincing evidence:

(1) the debtor made representations;

(2) at the time he knew the representations were false;

(3) he made them with the intention and purpose of deceiving the creditor;

(4) the creditor relied on the representations;

(5) the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*Stamford Municipal Employees Credit Union, Inc. v. Edwards (In re Edwards),* 67 B.R. 1008 (Bankr.Conn.1986).

■ As previously stated, Seaborne admits making representations he knew were false when obtaining the loan from City Federal, thus satisfying elements (1) and (2) above. Debtors in bankruptcy are presumed to intend the natural consequences of their acts, thus, a debtor who knowingly makes a false representation is presumed to have intent to deceive. *Standard Chartered Bank v. Klepach (Matter of Bonanza Import & Export, Inc).,* 43 B.R. 570 (Bankr.S.D.Fla.1984). Therefore, City Federal met its burden of proof as to this element of intent.

■ Seaborne contends City Federal did not reasonably rely on the closing documents before entering into the loan agreement with North Village. Seaborne is correct when stating a creditor must reasonably rely on a financial statement in deciding whether or not to extend a loan under Section 523(a)(2)(B). *Thul v. Ophaug (In re Ophaug),* 827 F.2d 340, 343 (8th Cir. 1987). Congress explicitly requires proof of reasonable reliance in order to except a debt from discharge under Section 523(a)(2)(B) because otherwise creditors might induce debtors to falsify financial statements in order to make a debt nondischargeable. *Id.* at 343, citing *Mechanics and Farmers Savings Bank v. Fosco, (In re Fosco),* 14 B.R. 918 (Bankr.Conn.1981). However, as stated above, the proper Code provision applicable to this case is Section 523(a)(2)(A). Section 523(a)(2)(A) does not require reasonable reliance; it requires a creditor prove he relied on the debtor's fraudulent representations when extending credit. *Ophaug, supra* at 343.

■ In addition, creditor's partial reliance on certain documents when deciding to extend a loan will satisfy the element of reliance and support non-discharge. *Matter of Bonanza Import & Export, Inc., supra* at 576. While it is true City Federal

could have relied on the appraisal of the property when determining whether or not to enter into the loan agreement with North Village, as Seaborne contends, the reliance on the closing documents will satisfy the element of reliance under Section 523(a)(2)(A). Thus, City Federal sustained its burden by proving it relied on the closing documents before deciding to loan North Village the money.

### III.

The last issue is whether Seaborne is personally liable on the deficiency debt even though he is not personally liable on North Village's promissory note and mortgage to City Federal because it is non-recourse indebtedness. North Village gave City Federal a non-recourse promissory note and mortgage. Therefore, Seaborne, North Village, and the limited and general partners are not individually liable on the debt. However, a court will hold a shareholder, officer, or director of a corporate entity personally liable for a tort, including fraud, in which he himself is involved. *McMillan v. Firestone (In re Firestone)*, 26 B.R. 706, 714 (Bankr.S.D.Fla.1982). The rule is summarized in *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406 (10th Cir. 1958):

> It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom. But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of a corporation. Specific direction or sanction of, or active participation or cooperation in, a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation.

*Id.* at 408–409; *Firestone, supra* at 714.

Seaborne was the sole representative acting on behalf of North Village. He performed the following tasks: sought the loan from City Federal, accepted the commitment letter, obtained the signatures from the alleged limited partners on the closing documents, and delivered the closing documents to City Federal. Therefore, the Court finds Seaborne actively participated in committing fraud by knowingly delivering false closing documents to City Federal. Thus, his actions justify holding him personally liable on the deficiency debt to City Federal.

The Court finds City Federal met its burden of proof that Seaborne's deficiency debt should be excepted from discharge pursuant to Title 11 U.S.C. § 523(a)(2)(A). Thus, the indebtedness to City Federal is nondischargeable.

A separate final judgment shall be entered by this Court.