Bamco 18 v. Reeves                        CV-94-326-B    08/23/95
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


Bamco 18

     v.                                      Civil No. 94-326-B

R. Bruce Reeves


                          O P I N I O N


     This is an appeal from the United States Bankruptcy Court's

decision finding R. Bruce Reeves's debt to Bamco 18

nondischargeable pursuant to 11 U.S.C.A. § 523(a)(2)(A) (West

1993 & Supp. 1995).  For the following reasons I affirm.


                I.   FACTUAL AND PROCEDURAL BACKGROUND

A.   Reeves and Bamco's Business Relationship

     The present controversy arose from a business relationship

between Bamco and Reeves.  Reeves was the president and sole

shareholder of MPI Corporation.  In addition, he was the sole

limited partner in Hospitality Associates of Tappan Zee

("Hospitality"), a partnership which ran a hotel and conference

center in Nyack, New York.  MPI was the general partner in

Hospitality.

The parties arranged for Bamco to purchase a limited partnership interest in the hotel and conference center owned and operated by Hospitality. In the course of negotiations Reeves represented to Bamco that the hotel needed renovations, that Hospitality would supervise those renovations, and that the return on the investment would be "dynamite." He further represented that he had invested $500,000 of his own cash in the venture.

Based on these preliminary discussions, Reeves, MPI, and Bamco executed a Letter of Intent ("LOI") for Bamco's acquisition of a 60% limited partnership interest in Hospitality. The LOI stated that Reeves had already contributed $500,000 toward the project and ultimately the project would be funded by an additional $750,000, $150,000 from Reeves and the remainder from Bamco.

Shortly thereafter, the parties executed the Limited Partnership Agreement ("LPA"). MPI was granted a 1% interest in the partnership as the general partner of Hospitality, Bamco was granted a 59.4% interest, and Reeves was granted a 39.6% interest. Pursuant to the LPA, Bamco and Reeves were required to

2

make initial capital contributions in cash of $575,000 and $175,000 respectively. Further, the LPA provided that Bamco would loan MPI $240,000 for working capital and renovation costs and that MPI would be responsible for managing the business and assets of the partnership. The LPA also included several provisions governing the conduct of MPI and Reeves, including: (1) requiring MPI to seek approval for the disposition and acquisition of partnership property; (2) prohibiting MPI or Reeves from using any partnership funds or property for uses other than for partnership related uses; (3) requiring MPI to keep true and complete accounts; and (4) requiring MPI to collect claims of the partnership. Finally, the LPA contained several warranties and representations by MPI.

Bamco complied with the requirements of the LPA and contributed the required cash on March 7, 1985, as well as executing the $240,000 loan to MPI for renovations and working capital. Reeves, however, did not make his initial capital contribution in cash as required by the LPA. Instead, Reeves caused MPI to create an accounts receivable of $150,000 on the partnership books and to credit his capital contribution account for that amount to satisfy his obligation as limited partner of

3

Hospitality.  Further, he caused MPI to transfer $350,000 from Hospitality's account to his own personal account as an alleged reimbursement of prior capital contributions which he in fact had never made.  In addition, neither the $240,000 loan nor Bamco's initial cash capital contribution were ever made available to Hospitality for partnership purposes.

About a month later, Reeves recommended that the partnership raise additional funds to finance additional capital improvements and relieve some of the financial stresses placed on the partnership by the existing renovation program.  To satisfy this need for additional funding, the partnership borrowed $550,000 from ITT Industrial Credit and as part of the loan agreement Bamco provided ITT with a standby letter of credit.

Outside auditors for Hospitality eventually became aware of Hospitality's working capital problems and issued a report to Reeves which stated in pertinent part that unless the situation improved the partnership would be forced to dissolve.  This language was deleted from their report when it was finally delivered to Bamco in September 1986.  Several additional capital calls were made to the limited partners in 1985 and 1986, and Bamco's contributions to Hospitality eventually totalled $2,144,298.

4

In contrast, Reeves, while representing that he had been making his capital contributions in cash, did not in fact make any of them; rather, he manipulated the accounts of Hospitality to have it appear that he had satisfied these obligations. After several requests by Bamco for the unaudited monthly financial statements for the partnership, Reeves disclosed the statements in the spring of 1985. Those statements while showing the capital contributions of the limited partners as required under the LPA, failed to disclose that Reeves's contributions were satisfied by unfunded accounts receivables rather than cash.

## B. The New York Litigation

In July 1987, Bamco filed suit against Reeves alleging violations of federal securities laws, RICO violations, breach of contract, breach of warranty, and common law fraud claims. With respect to the fraud claims, in its complaint filed in the United States District Court for the Southern District of New York, Bamco stated: "Reeves fraudulently induced BAMCO to invest in the hotel venture and to continue pouring money into such enterprise on the basis of false and misleading statements." At the time Bamco filed this action it was unaware that Reeves had failed to fund his capital contributions in cash as required by the LPA.

On December 10, 1987, the New York court dismissed Bamco's fraud claims for failure to meet the requirements of Fed. R. Civ. P. 9(b).[1]  The court found that Bamco had adequately identified the alleged misrepresentations, i.e. that the property needed restoration that would be completed for $950,000; that projected earnings for Bamco from investment in that project would be significant; and statements that there were hotel reservations already booked until sometime into the future.  The court stated, however, that Bamco failed to allege the time and place of the misrepresentations nor did it provide a factual basis to support its allegation regarding Reeves's state of mind.  Bamco 18 v. Reeves, No. 87-cv-5496, slip op. at 14 (S.D.N.Y. Dec. 10, 1987).  The court specifically declined to address Reeves's motion to dismiss the fraud claim pursuant to Fed. R. Civ. P. 12(b)(6) and granted Bamco leave to amend its complaint to meet the requirements of Rule 9.[2]  Id. at 14-15.

_____

[1]Fed. R. Civ. P. 9(b) provides in pertinent part: "**(b) Fraud, Mistake, Condition of the Mind.**  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

[2]The court also granted Reeves's motion to dismiss Bamco's RICO and 10(b) claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Id. at 15.  Reeves's motion did not

Upon discovery of Reeves's diversion of funds prior to trial in the New York action, Bamco, relying exclusively on this new evidence, moved for summary judgment without filing an amended complaint. Specifically, Bamco argued that summary judgment was warranted because there were no genuine issues of material fact with respect to Reeves's diversion of funds and that it was therefore entitled to judgment as a matter of law for breach of contract, warranty, and fiduciary duty. The New York court granted Bamco's motion for summary judgment on its claims for breach of fiduciary duty and warranty.[3] Bamco 18 v. Reeves, 717 F. Supp. 143, 148 (S.D.N.Y. 1989).

---

address Bamco's other claims.

[3]The judgment of the New York court on July 5, 1989, was against MPI only and granted Bamco's motion for an accounting. Subsequently, the New York court found that the false and misleading statements by Reeves caused Bamco to make its capital contributions. Bamco 18 v. Reeves, No. 87-cv-5495, slip op. at 3 (Nov. 3, 1989). Based on these findings, the court entered judgment for Bamco against MPI for $2,280,914 on November 17, 1989.

After the bankruptcy court lifted the automatic stay, the New York court found that Reeves was personally liable on the same bases that MPI had been found liable in its earlier opinion. Bamco 18 v. Reeves, No. 87-cv-5496, slip op. at 1 (March 4, 1990). Subsequently, the court entered judgment against Reeves in the amount of $2,324,645. Bamco 18 v. Reeves, No. 87-cv-5496, slip op. at 1 (March 15, 1990).

In its opinion, the New York court found that Reeves had violated New York Partnership law through his "offsetting payable approach" to capital contribution requirements of the partnership.  Id.  The court also found that the practice violated several portions of the LPA.  Id.  The United States Court of Appeals for the Second Circuit affirmed the New York court's decisions.  Bamco 18 v. Reeves, No. 90-7346, slip op. at 2 (2d Cir. Oct. 5, 1990).

**C.   The Bankruptcy Proceedings**

On May 31, 1989, after oral argument on the summary judgment motion in the New York action, Reeves filed for Chapter 11 protection and subsequently caused MPI to place Hospitality in bankruptcy.[4]  Bamco then moved to have MPI removed as the general partner of Hospitality for breach of fiduciary duty relating to the bankruptcy filing.  Bamco also filed a complaint in the bankruptcy proceeding alleging that the judgment of the New York court was nondischargeable pursuant to 11 U.S.C.A. § 523(a)(2)(A) (West 1993 & Supp. 1995), because the underlying debt was

---

[4]Reeves's bankruptcy proceeding was later converted into a Chapter 7 proceeding.

8

obtained by false representations and actual fraud.[5]  Reeves filed a motion for summary judgment, arguing that Bamco was barred by collateral estoppel from asserting this claim in the bankruptcy proceeding and that Bamco's reliance on written statements to support its claim was not permissible under § 523(a)(2)(A).

Based in part on the specific factual findings made by the New York court as well as evidence adduced at a two day hearing, the bankruptcy court held that Reeves's debt to Bamco was not dischargeable because he obtained the money by fraud within the meaning of § 523(a)(2)(A).  Specifically, the bankruptcy court held that the factual findings determined in the New York action that were relevant to the fraud claim were binding on Reeves. Coupled with additional evidence regarding Reeves's state of mind and the reasonableness of Bamco's reliance on his misrepresentations, the court held that the debt was not

---

[5]Bamco also claimed that Reeves's debt was nondischargeable pursuant to 11 U.S.C.A. § 523(a)(4) and § 523(a)(6) because he breached his fiduciary duties and because the debt arose by willful and malicious injury.  The bankruptcy court disposed of those claims and neither party challenges their disposition below.  This appeal, therefore, concerns only the § 523(a)(2)(A) claim and I limit my discussion of the procedural background to the court's disposition of that claim.

dischargeable.

## II. DISCUSSION

Reeves now appeals the bankruptcy court's judgment in favor of Bamco on its § 523(a)(2)(A) claim on three grounds: (1) the bankruptcy court erroneously applied the doctrine of collateral estoppel; (2) the bankruptcy court erroneously relied on written statements of Reeves's financial condition to support its finding of fraud under § 523(a)(2)(A); and (3) there is insufficient evidence to support the bankruptcy court's nondischargeability order under § 523(a)(2)(A).

On intermediate appeal to a district court, a final order of the bankruptcy court is subject to the same standards of review employed in direct appeals to the court of appeals in civil cases generally. In re LaRoche, 969 F.2d 1299, 1301 (1st Cir. 1992). "The district court accepts all bankruptcy court findings of fact unless 'clearly erroneous,' Fed. R. Bankr. P. 8013, but reviews rulings of law de novo." Id. Because all but one of the issues raised on appeal challenge rulings of law, and the final issue on appeal centers on the sufficiency of the evidence, my review here is plenary. See Rolon-Alvarado v. Municipality of San Juan, 1 F.3d 74, 77 (1st Cir. 1993). I address Reeves's challenges in

the order listed above.

## A. The Collateral Estoppel Issues

### 1. Whether the bankruptcy court erred in not precluding Bamco from litigating its fraud claim on grounds that it was barred by the doctrine of collateral estoppel.

Reeves argues that the bankruptcy court should have applied the doctrine of collateral estoppel to bar Bamco from raising fraud as a ground for nondischarge in bankruptcy because the New York court dismissed Bamco's common law fraud claim in a prior action and Bamco elected not to amend its complaint. Bamco responds with two arguments: (1) the dischargeability hearing in bankruptcy court raised different fraud issues than were raised in the New York proceeding and, therefore, collateral estoppel does not bar it from raising fraud as a defense to dischargeability of Reeves's debt; and (2) even though the type of dismissal granted by the New York court is one with prejudice, no facts were adjudicated in the prior proceeding, and therefore there are no determinations to which the doctrine of collateral estoppel may be applied. Because I agree with Bamco's second argument, I need not address the other arguments raised by the parties.

Collateral estoppel principles apply to discharge exception proceedings brought pursuant to § 523(a). <u>Grogan v. Garner</u>, 498

11

U.S. 279, 284-85 n.11 (1991).  The doctrine of collateral estoppel bars a party from relitigating an issue where that issue was actually litigated in a prior proceeding and its determination was necessary to the prior judgment.  Lawlor v. National Screen Svc. Corp., 349 U.S. 322, 326 (1955); Lovell v. Mixon, 719 F.2d 1373, 1376 (8th Cir. 1983); see also In re Dein Host, Inc., 86 B.R. 318, 322 (D.N.H. 1988).  In order for collateral estoppel to apply, five requirements must be met: "1. the determination ... must be over an issue which was actually litigated in the first forum; 2. that determination must result in a valid and final judgment; 3. the determination must be essential to the judgment which is rendered by, and in, the first forum; 4. the issue before the second forum must be the same as the one in the first forum; and 5. the parties in the second action must be the same as those in the first."  NLRB v. Donna-Lee Sportswear Co., 836 F.2d 31, 34 (1st Cir. 1987); accord In re Dein Host, 86 B.R. at 322.  Both parties agree that the dismissal entered by the New York court is a valid and final judgment and that the parties in both actions are identical.  The controversy, therefore, centers on the remaining three elements.  Because I conclude that the fraud issue presented in the New York action was not actually litigated, I conclude that the bankruptcy court did not err in

12

refusing to grant Reeves's motion for summary judgment on collateral estoppel grounds, whether or not the issues are identical.

The bankruptcy court's conclusion that collateral estoppel did not bar Bamco from raising fraud as a defense to dischargeability was not error because the fraud issue in the New York proceeding was not actually litigated. Unlike the doctrine of claim preclusion, collateral estoppel bars only those issues that were actually litigated, not those that could have been, but were not litigated. In re Belmont Realty Corp., 11 F.3d 1092, 1097 (1st Cir. 1993) (quoting Rest. (2d) Judgments § 27 (1982)). Specifically, the party against whom collateral estoppel is being employed must have had a full and fair opportunity to litigate the issue in the prior proceeding. Lawlor, 349 U.S. at 327 (affirming lower court's decision not to estop party from litigating issue where prior proceeding ended with dismissal without a hearing and therefore did not afford the party a full and fair opportunity to litigate). Thus, in collateral estoppel cases "the earlier judgment forecloses only a matter actually litigated and essential to the decision. The first judgment does not prevent re-examination of issues that might have been, but were not, litigated in the earlier action." In re Gaebler, 88

13

B.R. 62, 65 (E.D. Pa. 1988) (internal quotations and citations omitted).  An issue has been finally determined when "a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." O'Reilly v. Malon, 747 F.2d 820, 823 (1st Cir. 1984) (per curiam).

Although a dismissal for failure to state a claim may act to bar a party from relitigating that cause of action, because the parties have not contested the issues underlying the claim and the court has not passed on the truth of the allegations in the complaint, collateral estoppel cannot be invoked as a bar in subsequent litigation with respect to the issues underlying that dismissed claim.  Cf. Levinson v. United States, 969 F.2d 260, 264 (7th Cir. 1992) (where parties settled prior case before trial it had no collateral estoppel effect because underlying issues never contested or decided by a court), cert. denied, 113 S. Ct. 505 (1992); In re Berr, 172 B.R. 299, 306 (Bankr. 9th Cir. 1994) (party asserting collateral estoppel has burden of introducing record sufficient to reveal controlling facts and pinpoint exact issues litigated); Rooding v. Peters, 864 F. Supp. 732, 736 (N.D. Ill. 1994) (collateral estoppel applies only if

issue was argued and decided on the merits in prior litigation).
Accord 1B Moore's Federal Practice ¶ 0.443[4] (2d ed. 1995);
Restatement (Second) Judgments § 27 cmt. e (1982). The fact that
Bamco may have been able to amend its complaint to adequately
state its common law fraud claim does not change this result.
Bamco voluntarily chose not to pursue the common law fraud claim,
and therefore, any issues necessary to the determination of that
claim were not litigated, irrespective of whether they could have
been litigated. Cf. Lawlor, 349 U.S. at 326-27. Therefore, I
conclude that the bankruptcy court did not err in denying
Reeves's motion for summary judgment on this basis.

**2. Whether the bankruptcy court erred in giving preclusive effect to the New York court's factual findings.**

Reeves argues that if Bamco is permitted to proceed on its
fraud claim in the bankruptcy proceeding, then it should be
precluded from using the factual findings of the New York
litigation in support of that claim. Specifically, he argues
that because the factual determinations were made on different
claims, those findings have no relevance to Bamco's present §
523(a)(2)(A) fraud claim. In response, Bamco contends that
Reeves's argument misconceives the doctrine of collateral

15

estoppel.  For the following reasons, I agree with Bamco.[6]

The bankruptcy court concluded that the factual determinations made by the New York court regarding what the parties did or did not do in the course of their dealings were essential to the New York court's judgment and that Reeves had every incentive to fully defend in that prior proceeding.  Thus, the court gave preclusive effect to the New York court's factual findings regarding those issues.  Reeves contends that this was error because these facts were determined with respect to causes of action unrelated to the present cause of action.  Reeves, however, misconceives the doctrine of collateral estoppel.

"Under the doctrine of collateral estoppel, . . . , [a final] judgment precludes relitigation of issues actually litigated and determined in the prior suit, <u>regardless of whether it was based on the same cause of action as the second suit</u>."

---

[6]Reeves also argues that because § 523(a)(2)(A) restricts the scope of bankruptcy court's evidence in a way that the New York litigation was not restricted, resort to the doctrine of collateral was inappropriate.  Specifically, he notes the restriction placed on actions brought pursuant to § 523(a)(2)(A) versus § 523(a)(2)(B), i.e. the former excepting fraud based on written misrepresentations of the debtor's financial condition.  Because I find that the bankruptcy court did not err when it relied on written representations to support its § 523(a)(2)(A) order, I also reject this portion of Reeves's collateral estoppel argument.

16

<u>Lawlor</u>, 349 U.S. at 326 (emphasis added).  Specifically in the context of bankruptcy proceedings, ". . . a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and that were actually litigated and determined in the prior action."  <u>Grogan</u>, 498 U.S. at 284 (citing Restatement (Second) Judgments § 27 (1982)).

While the causes of action may be different in the two actions at issue here, the underlying factual issues of the nature of the transactions, whether Reeves made certain statements and when, are identical to the factual issues concerning the events that transpired over the course of the relationship between Reeves and that Bamco raised in its claim of fraud in the bankruptcy proceeding.  Therefore, with respect to those issues already decided and necessary to the prior judgment, the bankruptcy court did not err by giving them preclusive effect.

**B.** **<u>Whether Reeves's Written Misrepresentations Were Impermissibly Relied Upon by the Bankruptcy Court in Deciding Dischargeability Under § 523(a)(2)(A).</u>**

Reeves argues that Bamco should have been precluded from alleging and referring to written representations respecting Reeves's capital contributions to the partnership in its claim

17

under § 523(a)(2)(A) because that provision expressly excludes from its scope written misrepresentations respecting a debtor's financial condition. In response, Bamco contends that the written representations at issue were not written statements of Reeves's financial condition within the meaning of § 523(a)(2)(B) and therefore are a proper basis for an order of nondischargeability pursuant to § 523(a)(2)(A). I agree with Bamco.

Sections 523(a)(2)(A) and (B) govern misrepresentations of financial condition, the former covering statements that are not written, the latter dealing with written statements of the debtor's financial condition. 11 U.S.C.A. § 523(a)(2)(A); id. § 523(a)(2)(B). Bamco's claim below was brought pursuant to § 523(a)(2)(A), which states in pertinent part that a debtor is not entitled to discharge for money, property, or services obtained by false pretenses, a representation or actual fraud, <u>other than a statement respecting the debtor's or an insider's financial condition</u>. In contrast, discharge claims based on fraudulent written statements concerning a debtor's financial condition must be brought pursuant to § 523(a)(2)(B), not § 523(a)(2)(A). The two provisions are mutually exclusive. <u>In re Attalla</u>, 176 B.R. 650, 652 (Bankr. D.N.H. 1994) (citing <u>In re Sansoucy</u>, 136 B.R.

18

20, 23 (Bankr. D.N.H. 1992)); In re Seaborne, 106 B.R. 711, 713 (Bankr. M.D. Fla. 1989). Thus, if the statements at issue are statements of Reeves's "financial condition" they cannot act as a basis for ordering nondischarge pursuant to § 523(a)(2)(A).

A "'statement of a debtor's or insider's financial condition' as used in § 523(a)(2)(B) means a balance sheet and/or profit and loss statement or other accounting of an entity's overall financial health and not a mere statement as to a single asset or liability." In re Sansoucy, 136 B.R. at 23 ("financial condition" should be given its normal commercial meaning) (citations omitted); In re O'Brien, 110 B.R. 27, 30 (Bankr. D. Colo. 1990) (financial statement commonly understood as statement defining debtor's pecuniary standing); In re Seaborne, 106 B.R. at 713-14 (statement of financial condition is statement of debtor's net worth). For example, balance sheets, income statements, and schedules of assets and liabilities fall within the meaning of statements of financial condition. In re Price, 123 B.R. 42, 45 (N.D. Ill. 1991) (criticized on other grounds in In re Dorsey, 162 B.R. 150 (Bankr. N.D. Ill. 1993)). These types of statements permit creditors to assess a potential debtor's overall financial responsibility. Id.

19

The written statements Reeves argues were impermissibly considered by the bankruptcy court as a basis for Bamco's § 523(a)(2)(A) claim include statements concerning the amount and nature of his capital contribution to the partnership. These are not statements which demonstrate the net worth of Reeves or his businesses, but rather are statements concerning single liabilities. See In re Sansoucy, 136 B.R. at 23; In re Seaborne, 106 B.R. at 713-14. Thus, I conclude that the bankruptcy court did not err in relying on these written statements in ruling that Reeves debt was not dischargeable pursuant to § 523(a)(2)(A).

C. **Whether the Bankruptcy Court's Finding That Reeves Committed Actual Fraud is Supported by the Evidence.**

Reeves relies primarily on his contentions, which I have already rejected, to support his argument that there is insufficient evidence to support the bankruptcy court's dischargeability determination. Because I find no error in the court's decision to give preclusive effect to the factual findings of the New York litigation and in its reliance on written statements by Reeves to support its nondischargeability order, and because Reeves raises no other arguments in support of his sufficiency argument, I conclude that the bankruptcy court's conclusions are sufficiently supported by the evidence.

20

In order to prove a claim of actual fraud under §
523(a)(2)(A) a creditor must show: "(1) a false representation by
the debtor; (2) known to be false at the time it was made; (3)
made with the intention and purpose of deceiving the creditor;
(4) which was reasonably relied on by the creditor; and (5) which
resulted in loss or damage to the creditor as the proximate
result of the false representation." In re Attalla, 176 B.R. at
664 (citations omitted); accord In re Menna, 16 F.3d 7, 10 (1st
Cir. 1994). The party opposing discharge has the burden to prove
these elements by a preponderance of the evidence. Grogan, 498
U.S. at 291; In re O'Brien, 110 B.R. at 31.

There is ample evidence in the record below that Reeves made
false representations concerning his capital contributions to
Hospitality, that he knew at the time they were false, that he
intended to deceive Bamco, and that Bamco reasonably relied on
those misrepresentations to its detriment. Reeves created
credits in his capital account which indicated that he satisfied
his contribution requirements when in fact he never contributed
the capital. Further, he made representations to Bamco that the
renovations were exceeding expected cost and as a result the
partnership borrowed additional funds. In addition, he later
made several capital calls to the limited partners in 1985 and

21

1986 based on these false statements. Further, the course of conduct of the parties clearly indicated that Bamco sought cash contributions from Reeves, not cash equivalent. Reeves's contentions to the contrary at trial were not credited by the bankruptcy court and that assessment is not clearly erroneous.

These findings are further supported by the circumstances surrounding the $240,000 loan to Hospitality from Bamco and its use for nonpartnership business contrary to its intended purpose as well as the tampering of the outside auditor report prior to its belated distribution to Bamco.

Finally, the court's conclusion that Bamco's reliance on these representations was reasonable and that it relied to its detriment is also supported by sufficient evidence. Based on the evidence that there were no reliable financial statements available for the hotel, Bamco's prior dealings with Reeves, and the time frame for decision making, there was sufficient evidence to conclude that Bamco's reliance was reasonable. See In re Ledford, 970 F.2d 1556, 1560 (6th Cir. 1992) (listing factors assessed when determining whether creditor's reliance is reasonable under all the circumstances) (cited with approval in In re Menna, 16 F.3d at 11), cert. denied, 113 S. Ct. 1272

22

(1993); see also In re Mayer, 51 F.3d 670, 676 (7th Cir. 1995) (reliance means conjunction of material misrepresentations and cause in fact), pet. for cert. filed, July 24, 1995. Bamco made initial and subsequent capital contributions after Reeves made these material misrepresentations, demonstrating that its loss was proximately caused by its reasonable reliance on Reeves's statements. See In re Lane, 937 F.2d 694, 698 (1st Cir. 1991), appeal after remand and aff'd without opinion, 50 F.3d 1 (1st Cir. 1995). Therefore, I conclude that the bankruptcy court's findings are sufficiently supported by the evidence.

D.   **Amount of Damages.**

Finally, Reeves argues that the bankruptcy court erred in determining that the amount of the nondischargeable debt was $2,324,645 because Bamco failed to present any evidence in its case-in-chief demonstrating that Reeves's fraud proximately caused that amount of damage. In response, Bamco contends that the New York court's findings as to the amount of damages and causation were properly offered and accepted as evidence of those issues. In its complaint, Bamco sought a determination of the nondischargeability of a debt owed to it by Reeves pursuant to the final judgment entered by the New York court. Second Amended Compl. at ¶ 22. That court's final judgment was admitted in

23

evidence by the bankruptcy court.  Reeves does not challenge the calculations by the New York court or the admissibility of that portion of the judgment.  The final judgment of the New York court calculated the amount of money expended by Bamco for its capital contributions as well as the loans made by Bamco to Hospitality which were never made available for partnership purposes.  Therefore, I conclude that there was sufficient evidence to support the bankruptcy court's determination of damages.

## III.  CONCLUSION

For the foregoing reasons the bankruptcy court judgment is affirmed.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

August 23, 1995

cc:  Nathan T. Foose, Esq.
     Bruce A. Harwood, Esq.
     John F. Cullen, Esq.
     George Vannah, USBC