**In the Matter of Melvin WIGGINS, Debtor.**

**First National Bank, Plaintiff,**

v.

**Melvin Wiggins, Defendant.**

**Bankruptcy No. 98–53576RFH. Adversary No. 99–5079.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

March 1, 2000.

Emmett L. Goodman, Jr., Macon, GA, for plaintiff.

Sharon R. Jones, Milledgeville, GA, for defendant.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

First National Bank, Plaintiff, filed a complaint on June 23, 1999. Melvin Wiggins, Defendant, filed a response on June 29, 1999. A trial was held on January 19, 2000. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

### Findings of Fact

Defendant has three minor children. Defendant is not married to the mother of his children. Defendant's children, during the relevant time, resided with their mother.

Defendant failed to support his children. The State of Georgia provided support to Defendant's children. The Georgia Department of Human Resources (the "State") filed in March of 1997 a Complaint for Recovery of Child Support—AFDC. Defendant and the State reached an agreement. The Superior Court of Baldwin County, Georgia, entered an Order For Support on May 27, 1997. The order required Defendant to pay $14.00 per week until his child support arrearage of $4,858.82 was paid in full. Defendant was required to pay current child support in the amount of $98.00 per week. Defendant's payments were to be made through payroll deductions.

Defendant filed his 1997 income tax returns on January 31, 1998. Martha Durden of Evans & Associates prepared Defendant's returns, using information supplied by Defendant. Defendant represented that two of his children resided with him for twelve months during 1997. This enabled Defendant to qualify for the Earned Income Credit and the Head of Household filing status. Defendant's federal tax return shows that he was to receive a refund of $3,604 for the 1997 tax year.[1]

---

1. Defendant would have owed additional tax-

es of $137 if he had not claimed the Earned

Defendant wanted to receive his refund quickly. Ms. Durden prepared, using information supplied by Defendant, a form entitled: "REFUND ANTICIPATION LOAN (RAL), DEPOSIT APPLICATION PROGRAM AND REFUND ANTICIPATION CHECK (RAC) OFFERED BY FIRST NATIONAL BANK OF BALDWIN COUNTY."

Defendant placed his initials by the following statement:

IV. I/We Do Certify to the Following Information:

Applicant/Co–Applicant—Please initial and certify that the following information is true.

. . . .

/s/ MW ____ 2. I/We am/are not delinquent in the payment of Child Support

Defendant knew that he would not receive a RAL[2] if he owed a child support arrearage. Defendant's certification was the only means for Plaintiff to know whether Defendant owed any child support arrearage. There was no direct contact between Plaintiff and Defendant. Evans & Associates represented Plaintiff in the RAL application process. Defendant returned to Evans & Associates on February 6, 1998 and received his RAL check in the amount of $3,411.[3] The check shows that Plaintiff was the "lender bank." Defendant cashed his RAL check on February 9, 1998.

Unfortunately, Defendant owed $5,080.82 in child support arrearage on the date he applied for the RAL. The Internal Revenue Service sent a notice dated February 23, 1998, advising Defendant that his tax refund would be applied to his child support arrearage pursuant to IRC § 6402(c) or (d). In March of 1998, the State intercepted Defendant's entire federal tax refund and applied the funds to Defendant's child support arrearage. Defendant still owed $1,406.82 in child support arrearage.

Defendant was able to repay only a small amount of the RAL funds that he had received from Plaintiff. Defendant filed a petition under Chapter 13 of the Bankruptcy Code on August 21, 1998. Defendant owed Plaintiff $3,219.58 when he filed for bankruptcy relief. Defendant converted his Chapter 13 case to a Chapter 7 case on March 30, 1999.

### Conclusions of Law

Plaintiff contends that Defendant fraudulently represented that he owed no child support arrearage in order to obtain the RAL. Plaintiff contends that Defendant's obligation is nondischargeable under section 523(a)(2)(A), (2)(B), and (6) of the Bankruptcy Code.[4] The section provides as follows:

**§ 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a

---

Income Credit and the Head of Household filing status.

**2.** A Refund Anticipation Loan (RAL) enables a taxpayer to borrow funds on a short term basis in the amount of the taxpayer's expected federal income tax refund. The tax refund is directly deposited into a special account established in the taxpayer's name at a bank. The RAL is repaid when the tax refund is received. *See Cades v. H & R Block, Inc.,* 43

F.3d 869, 872 (4th Cir.1994), *cert. denied,* 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995).

**3.** Plaintiff and Evans & Associates charged certain fees which were to be deducted from Defendant's tax refund.

**4.** 11 U.S.C.A. § 523(a)(2)(A), (2)(B), (6) (West 1993 & Supp.1999).

statement respecting the debtor's or an insider's financial condition;

    (B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive; or

    . . . .

    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C.A. § 523(a)(2)(A), (2)(B), (6) (West 1993 & Supp.1999).

■ Plaintiff has the burden of proving all facts essential to support its objection to dischargeability by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

"The validity of a creditor's claim [against a bankrupt debtor] is determined by rules of state law. Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. at 657–58.

■ The Court is persuaded that Defendant's RAL application is not a financial statement for purposes of section 523(a)(2). The RAL application was not a balance sheet, profit and loss statement, or other accounting of Defendant's financial condition. *See Bal–Ross Grocers, Inc. v. Sansoucy (In re Sansoucy),* 136 B.R. 20, 23 (Bankr.D.N.H.1992); *City Federal Savings Bank v. Seaborne (In re Seaborne),* 106 B.R. 711, 714 (Bankr.M.D.Fla.1989).

Section 523(a)(2)(A) deals with deception other than through the use of a false financial statement. "For purposes of § 523(a)(2)(A) [of the Bankruptcy Code], a creditor must prove that (1) the debtor made a false representation with intent to deceive the creditor, (2) the creditor relied on the representation, (3) that his reliance was [justifiable], and (4) that the creditor sustained loss as a result of the representation." *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 676 (11th Cir. 1993); *see Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (justifiable reliance required under section 523(a)(2)(A)).

"In order to preclude the discharge of a particular debt because of a debtor's false representation, ... [t]he debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986).

■ The evidence shows that Defendant made a false representation on his RAL application. Defendant knew that he would not receive a RAL if he owed a child support arrearage. In May of 1997, Defendant was ordered to pay an arrearage of $4,858.82. Defendant's arrearage when he applied for the RAL in January of 1998 was $5,080.82. The RAL application and Defendant's RAL check shows that Plaintiff was the lender bank.

The Court is persuaded that Defendant knew that he owed a child support arrearage and made a false representation with an intent to deceive. Plaintiff suffered a loss because it would not have issued the RAL check except for Defendant's false representation.

Plaintiff's reliance must have been justifiable. "The [justifiable reliance] inquiry will thus focus on whether the falsity of the representation was or should have been readily apparent to the individual to who it was made." 4 *Collier on Bankruptcy* ¶ 523.08[1][d] p. 523–44 (15th ed.1999). *See also Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277, 284 (11th Cir.1995) ("justifi-

able reliance requires the creditor to act appropriately according to his individual circumstances").

Defendant represented on the RAL application that he owed no child support arrearage. Defendant's representation was the only means for Plaintiff to know whether Defendant owed any arrearage. The Court is persuaded that Plaintiff's reliance upon Defendant's representation was justifiable.

The Court is persuaded that Defendant's obligation is nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code. The Court need not address Plaintiff's contention that Defendant's obligation is nondischargeable under section 523(a)(6).

An order in accordance with this memorandum opinion will be entered this date.